# JANUARY TERM, 1873.

PRESENT—HON. S. A. KINGMAN, CHIEF JUSTICE.
HON. D. M. VALENTINE, } ASSOCIATE JUSTICES.
HON. D. J. BREWER,

## FREDERICK P. SAWYER v. ANTHONY SAUER.

1. RIGHT OF PARENT *to Recover for Injury to Child.* The right of a parent to recover in case of physical injuries to a minor child, is founded solely upon the assumption that such injury has wrought pecuniary loss to the parent, and is not affected by the extent of the pain and suffering of the child.

2. ——— *Support of Minor Child.* Where the father, with the assent of the minor, recognizes and discharges his obligation to support such minor, a third party negligently injuring the minor cannot question the validity of such obligation, not even though he show that prior and subsequent to the injury and consequent confinement the parent permitted the minor to receive the proceeds of his labor.

3. ——— *Right to Services.* The obligation to support goes hand in hand with the right to services, and where one exists the other follows.

4. INJURIES; *Disbursements, Damages.* It is competent for the parent to testify to the amount paid out by him in the support of his child, and in endeavoring to accomplish his cure.

5. EVIDENCE; *Value of Services.* In the absence of all other testimony, a jury is warranted in finding a party's services to be worth that which his employer is paying him.

*Error from Miami District Court.*

ACTION brought by defendant in error to recover for loss of services of his minor son, Emil J. Sauer. Emil the son (by a next friend) brought and prosecuted his action (ante p. 466,) to recover damages for the personal injuries sustained by him while riding in *Sawyer's* stage-coach as a passenger. The petition in this case alleges the minority of the said Emil, and the right of *Anthony Sauer*, the father, to the services of said Emil, and after averring the negligence, carelessness and

recklessness of plaintiff in error, (as set forth in the case of *Sawyer v. Sauer*, ante, pp. 466, 469,) alleges that by reason of such carelessness and recklessness —

"The said Emil J. Sauer was greatly injured, and one of the legs of the said Emil became and was broken, fractured and bruised, and the said Emil was otherwise greatly injured, wounded and cut, insomuch that he the said Emil then became lame, sick, and sore, has so continued ever since, and still so continues, and was and is prevented from attending to the lawful business of the plaintiff; and said plaintiff was during said time, and because of said injuries, deprived of the services, assistance, and labor of said Emil, and said plaintiff was forced to expend a large sum of money, to-wit, the sum of $600 in and about taking care of, and endeavoring to cure the said fractures, wounds and bruises, to the damage of the plaintiff one thousand dollars. Wherefore," etc.

The answer was a general denial. The case was commenced in the Labette district court, and transferred by stipulation of the parties to the Miami district court, where it was tried at the May Term 1872. Verdict and judgment for the plaintiff for $853.30. New trial refused, and *Sawyer* brings the case here on error.

*McComas & McKeighan*, for plaintiff in error:

1. As this case arose out of the same facts as the case of Emil J. Sauer, the son, and as the same instructions were asked except as to exemplary damages, we refer the court to our brief in that case, (*ante*, p. 467.) In this case the court committed the same error as in the case of Emil. The court also erred in giving instructions asked for by plaintiff and in refusing instructions asked for by defendant. The right of a parent to a claim for the services of his son arises from the father's obligation to provide for and take care of his minor son. (3 Ohio, 99, 102.) If the reason fails, the right is gone. In this case Sauer (the father) had not provided for his son's support for some time, nor at any time since the accident. A parent may abandon his right to his child's services, and allow him to receive them, and will not be entitled to the wages of

such services: 2 Pick., 332; 19 Pick., 29; 15 Mass., 272; 27 Mo., 516.

2. There was no evidence that the services of the son were worth anything. The measure of damages is what such services were worth, and not what was being paid by his employers. The verdict shows that the jury computed his services at $75 per month.

3. The court erred in allowing plaintiff to testify to what he paid: 4 Kas., 454, 472. The law only permits proof of expenses paid to be given when it is followed by a showing that they were necessary and reasonable.

The opinion of the court was delivered by

BREWER, J.: The same questions are in this case as in the case of the same plaintiff in error against *Emil J. Sauer*, decided at the last term, (ante, pp. 466, 469.) Nothing further need be said therefore concerning them. There are however some additional questions in this record which will require examination. And the most important arises on the refusal of an instruction asked by the defendant Sawyer, now plaintiff in error. In the case above mentioned, Emil J. Sauer, the party injured, was a minor, (who sued by his next friend,) to recover damages for injuries to himself. This action is brought by the father to recover for the loss of the services of his minor son, and for money paid out in taking care of him during his confinement, and in accomplishing his cure. It was the undisputed testimony that both prior and subsequent to the injury the minor was in the employ of Crider & Sauer on a salary, which by the consent of the parties, and in pursuance of a contract made by him, was received by the son. The father testified, " My son had been working for himself and receiving his salary four or six months before he received the injury." The son testified, "The position was got for me through my father. My father allowed me the benefit of my labor from that time to the present time. My father has allowed me to receive whatever I earn to a certain extent, when I am employed by any one. My father

33‡–10 KAS.

allows me to receive the proceeds of my own labor, and I pay my own expenses." This instruction was asked by defendant and refused:

"That if the jury find that Emil J. Sauer, the son of the plaintiff, at the time of the injury complained of, and since he has got well, was, has been, and is working for a salary, with the knowledge and consent of· the plaintiff, and while so working received to his own use, with the knowledge and consent of the plaintiff, the money therefor, and during the rest of the time paid his own expenses, that then the plaintiff cannot recover for any loss of service of said son while disabled by the injury complained of."

An instruction embodying a contrary doctrine was given, and the jury were told that if they found that the son sustained injury through negligence of defendant the plaintiff was entitled to recover for the loss of his son's services. The principle upon which this action is sustainable is very different from that upon which the one brought by the son is founded. So far as the personal injury is concerned the son sustains it all, and he alone can recover damages therefor. The father's person is uninjured; he suffers no pain of body, and has no right to recover anything because of his son's sufferings and injury. He recovers because the injury to his son has wrought a pecuniary loss to him, and the measure of his recovery is the extent of that pecuniary loss. All that establishes the son's right of recovery must be shown in this action, and something additional. The son must show that he is injured, and that such injury resulted from the negligence of defendant. The father must show this, and also that such injury has wrought a pecuniary loss to himself. (The father is under obligations to support his minor children, and entitled to receive the benefits of their labor.) If the injury increases the expense of the one, or lessens the value of the other, he suffers loss, and to this extent has a legal claim for reimbursement. The mere fact that one pays the surgeon's bills of a party injured gives no right of recovery, for it may be only a voluntary payment, and money thus paid cannot be recovered, no matter how

great the wrong done. But where the party paying is, by virtue of the relations subsisting between him and the party injured, bound to pay such bills, any act of a third party which creates a necessity for such bills casts a legal liability upon him. The father is, as to his minor children, thus situated. *Prima facie*, therefore, he has a right to recover. But circumstances may arise by which the father is released from his obligations to support, or loses or relinquishes his right to services. Whenever this is shown then the right to recover ceases. Did the testimony show that the father had lost or relinquished his right to his son's services? for unless it did, or at least raised such a question of fact as ought to have been settled by the jury, there was no error in the instructions given and refused. Questions as to the right of a parent to the child's services have generally arisen and been discussed in these two classes of cases, first, where the parent has brought an action for the seduction of a daughter, and second, where after the services have been performed by the child there is a dispute as to whether parent or child has the right to recover for them. In the first class of cases the daughter, being a party consenting, has no right of recovery, and hence courts in their zeal to punish the offender have gone to great lengths in sustaining the parent's right to services. Hardly anything has been sufficient to so far destroy this right as to prevent the parent's recovery for the loss of services sustained by the seduction of the daughter. Especially has this been true in the state of New York, where see the cases of *Martin v. Payne*, 9 Johns., 387; *Sargent v. ————*, 5 Cowen, 106; *Clark v. Fitch*, 2 Wend., 460, though a strong effort was made in the case of *Bartley v. Ritchmyer*, 4 N. Y., 38, to enforce the rule more stringently. On the other hand, in cases where the employer has paid the child for the services he has rendered, and the parent afterward sues for them, courts have leaned in the opposite direction, and considered comparatively slight circumstances as sufficient to show a relinquishment by the parent of all claim upon the services of his child. This has

been done to protect an employer acting in good faith, and paying the party who has actually performed the services. See the cases cited by counsel for plaintiff in error. The legislature of this state have attempted to assist in this direction: Gen. Stat., 580, ch. 67, § 4. It is easy to see that under these circumstances very different expressions and decisions will be found in the books concerning the relinquishment by the parent of his right to his child's services. In this case no services were performed. There is no attempt to make an employee pay a second time. The question is, had the father done that which released him from all obligation to take care of his son during his confinement? for the right to services goes hand in hand with the obligation to support. The father's right to services extend to the period of majority. He may alienate or relinquish it for a while, and afterward resume it. It may be a question whether he can, unless he proceed under the apprentices' act, make such a contract, or so act, as to destroy the rights and obligations of his relation beyond his power to resume them. In this case he unquestionably recognized the obligations, and proceeded to discharge them. This was done with the assent of the son; and if father and son adjust their relations upon the basis of the obligation of the parent to support, it is difficult to conceive of any good reason why a third party, who has through his negligence wrought an injury upon the child, should be allowed to question the validity of such adjustment. We see no error in the ruling of the district court.

Again it is objected that the court erred in allowing plaintiff to show what he paid out for expenses. We think the testimony competent, and that the case cited by counsel settles that point: *N. Mo. Rld. Co. v. Akers*, 4 Kas., 471, 472.

Still again it is insisted that there was no evidence that the services were worth anything: the measure of damages is what such services were worth, and not what was being paid by his employers. In the absence of all other testimony

a jury is warranted in finding a party's services worth that which his employers are paying him.

The judgment of the district court will be affirmed.

All the Justices concurring.