WHALEN, by guardian *ad litem*, Respondent, vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*January 9 — February 25, 1890.*

RAILROADS. *(1) Injury to person on track by train operated in usual manner: Duty to provide lookout. (2) Contributory negligence: Court and jury. (3, 4) Evidence.*

1. In the dusk of evening and at a place where, as defendant's employees knew, men, women, and children were likely to be upon the track, a freight train of about forty cars, some of which were behind the caboose, while backing slowly and with little noise down a side track, ran into and injured the plaintiff, a boy thirteen years old. The lights upon the train were burning, and the conductor and brakemen were using lighted lanterns, but there was no lookout at the rear of the train to warn people of danger. *Held* that, although the train was being operated in the usual manner, the failure to provide such lookout was negligence.

2. Upon the evidence — showing, among other things, that the plaintiff saw the cars upon the track ahead of him, but thought they were standing still; that he then allowed his attention to be diverted by a passing engine, but continued walking towards the backing freight train; and that it was not necessary for him to walk upon the track to reach his destination — it is *held* that the question of the plaintiff's negligence was properly submitted to the jury.

3. On cross-examination plaintiff was asked whether he had at any time climbed upon the cars to get a ride. An objection to this question was sustained, but he was allowed to testify, on such cross-examination, that he did not attempt to climb upon the cars the night he was injured, and he also testified later that sometimes, when the trains were switching there, he got on the freight cars for a ride. *Held*, that the ruling was not error.

4. A witness for plaintiff was permitted to testify as to how many people he had seen walking on the tracks at the point of the accident in a given time, a year or more after the accident. The plaintiff had previously testified that the number of people walking on the track at the time mentioned was about equal to the number walking there when he was injured. *Held*, that the evidence was competent to show the amount of travel there at the time of the accident.

APPEAL from the Circuit Court for *Marinette* County.

The plaintiff, a minor, brought this action, by his guardian *ad litem*, to recover damages for personal injuries received by him while walking upon one of the tracks of the defendant company, on its depot grounds at Marinette, on the evening of August 31, 1888, caused by his being run against by a car of the defendant moving on such track. He alleges the negligence of the defendant as the ground of his action.

Some description of such depot grounds and the tracks thereon is essential to an understanding of the case. The main track of the railroad runs from the passenger depot in Marinette, in a southerly direction. About 80 rods south of the depot, it passes a water-tank, and about 283 feet south of the tank it reaches certain coal-sheds, 224 feet long. These structures are on the east side of the track. 188 feet north of the tank, towards the depot, a switch connects the main track with the north end of a side track, which extends south, parallel to the main track on the west side thereof and about 8 feet distant therefrom, 93 rods — or about 50 rods south of the south end of the coal-sheds, where it again connects with the main track. This is called the "scale track," because scales for weighing cars are located therein, 176 feet north of the north end of the coal-shed. The grade of these tracks descends slightly to the north. North of the above-mentioned switch, about 76 feet, there is another switch, connecting the main track

with what is called the "Menekaunee Branch," which is a track on the east side of the main line, running in a northeast direction.

At the time of the accident, and before, there were sixty or more dwelling-houses in the vicinity of the coal-sheds; and the persons residing therein, and others, had been constantly accustomed, for nearly twenty years prior to 1888, to use such depot grounds and tracks as a foot-way to and from the city of Marinette (which is understood to be east of the depot) without any objection by the defendant. Plaintiff resided with his parents near the coal-sheds, and when injured was on his way from the depot to his home. He had lived there two years or more.   It is conceded by the defendant that those people, including the plaintiff, and the public were licensees upon those grounds and tracks, by force of long user of them for that purpose without objection by the defendant.

On the evening the plaintiff was injured, defendant's freight train No. 16, consisting of thirty-two or thirty-three cars, passed the Marinette depot from the north, about 6:45. It did not stop at the depot, but ran south beyond the south switch of the scale track, and backed north on that track. There were standing upon that track, in the vicinity of the coal-sheds, eight or nine loaded cars, coupled together, to be taken south by such train.   Defendant's passenger train No. 2 reached the Marinette depot the same evening at 6:55, stopping twenty minutes for supper, and to take water and coal.   The engine and tender of that train were uncoupled therefrom at the depot, and ran south on the main track to the tank where water was taken, and from thence to the coal-sheds for coal.   The testimony tends to show that the conductor of the freight train (No. 16) left his train at the switches north of the water-tank, and, after the passenger engine had passed to go to the tank and coal-sheds, he threw open those switches; thus connecting the scale track

and the Menekaunee track. This was done for the purpose of running the eight or nine cars standing on the scale track onto the Menekaunee track, so that, by running the engine around on the main track, it could take up these cars, return the same way with them, and couple them to the balance of the train. This would make up the train with those cars next the engine, where it was desired to have them. After the conductor of No. 16 had opened the switches as above stated, he signaled his train, which had been coupled to the eight or nine cars, and was standing still, to back north; and he walked up the track, south, to meet it. He met it at the scales, or a little north of that point, and climbed to the top of the first car. The train was moving slowly. He found a brakeman, about the middle of the eight or nine cars, loosening the brakes thereon. He directed the brakeman to go down, and uncouple those cars from the caboose, which was at the rear of the original train, and he did so. The engine was then stopped, and the eight or nine cars descended the grade by their own momentum, ran upon the Menekaunee track, and were there stopped by the conductor, who immediately returned and closed the switches. The passenger train then went south, immediately after which the freight conductor made up his train in the manner above indicated, and it also proceeded south.

The testimony also tends to show that the plaintiff was injured under the following circumstances: As already stated, he was going, when injured, from the depot to his home, near the coal-sheds. This was about 7 o'clock in the evening, and about one half hour after sunset. It was dusk but not dark. The lights upon the train were burning, and the conductor and brakemen were using lighted lanterns. The plaintiff passed up the main track, south, beyond the water-tank. The engine of the passenger train was then at the water-tank or came there about that time. When he had gone nearly half-way from the water-tank to

the coal-sheds, the engine left the tank and moved towards the sheds. He then left the main track, passed obliquely to the scale track, and walked south, up that track, between the rails. He saw the eight or nine cars on the track ahead of him, but thought they were standing still, and was not aware that the train to which they had been attached, was being backed down the track towards him. The engine on the main track passed him, making considerable noise. He turned his head to look at it, and continued to move on the side track in that position. After going in that manner probably 100 feet or more, without again looking south, he was struck by the rear car of the train. His foot was crushed, and afterwards amputated. It is probable that the cars on the side track had been thus moved north, about the same distance the plaintiff walked south on that track, before he was injured. The accident occurred a little north of the north end of the coal-sheds, and at about the time, or just after, the passenger engine reached the sheds. It also must have occurred before the conductor went upon the train, and probably while the brakeman was loosening the brakes on the more southerly of the eight or nine cars taken up on the side track.

The foregoing is believed to be a sufficient statement of the location of the tracks, the manner in which the trains were operated, and the circumstances of the injury complained of. The testimony also tends to show that the trains, on the day of the accident, were operated in the manner in which they had usually been operated for some time previously. It also tends to show that the plaintiff was familiar with the usual manner in which the trains were operated at that place. When injured, the plaintiff was within two months of thirteen years of age.

The rulings of the court on the trial are sufficiently stated in the opinion. The jury returned a general verdict for the plaintiff, and assessed his damages at $5,000. A

motion for a new trial was denied, and judgment entered for plaintiff pursuant to the verdict. The defendant appeals from the judgment.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *F. C. Winkler.* They contended, *inter alia,* that defendant did not move its cars in a negligent manner. The train was operated in the usual way, and the plaintiff, who was at most a mere licensee, assumed the incident risk. *Illinois Cent. R. Co. v. Godfrey,* 71 Ill. 500; *Mitchell v. C. & G. T. R. Co.* 51 Mich. 238; *Vanderbeck v. Hendry,* 34 N. J. Law, 472; *Sutton v. N. Y. C. & H. R. R. Co.* 66 N. Y. 248; *Gallagher v. Humphrey,* 6 L. T. (N. S.), 684; *Davis v. C. & N. W. R. Co.* 58 Wis. 657; *Hogan v. C., M. & St. P. R. Co.* 59 id. 139. Plaintiff was not exercising such care as should be required of a boy of his age under the circumstances. *Paducah & M. R. Co. v. Hoehl,* 12 Bush, 41; *Moore v. P. R. Co.* 99 Pa. St. 301; *Nagle v. A. V. R. Co.* 88 id. 35; *Reynolds v. N. Y. C. & H. R. R. Co.* 58 N. Y. 248; *Wendell v. N. Y. C. & H. R. R. Co.* 91 id. 420; *Ecliff v. W., St. L. & P. R. Co.* 64 Mich. 196; *Masser v. C., R. I. & P. R. Co.* 68 Iowa, 602; *Twist v. W. & St. P. R. Co.* 39 Minn. 164; *Achtenhagen v. Watertown,* 18 Wis. 331.

For the respondent there was a brief by *Fairchild & Fairchild,* and oral argument by *H. O. Fairchild.*

LYON, J. I. On the subject of the negligence of the defendant company the learned circuit judge instructed the jury as follows: "Parties managing moving trains must provide a careful lookout in the direction that the train is moving, in places where people, and especially children, are liable to be upon the track. When a train is being drawn by a locomotive, there is always a lookout and means of giving notice and warning to travelers on the track or in

places of danger of the approach of the train. When a train is being backed, then the train is in such a condition or in such a position that other means of warning are required by the law, and, as I have given out in the rule, there must be some lookout provided, so that, in case parties, especially in localities where women and children are likely to be, where those parties are, they can be warned of approaching danger, if they don't see it."

It is undisputed that the train which was backed against the plaintiff and injured him, was in a locality where men, women, and children were likely to be upon the tracks, of which fact the employees of defendant operating the train had knowledge, and that, although a brakeman might have been on one of the eight or nine rear cars when the injury was inflicted, he was not there as a lookout, to warn people who were walking on the track of danger, and was not in the performance of any such duty. Such being the testimony, the instruction above quoted is equivalent to an instruction that because the place of accident was so used, and because there was no such lookout provided, the defendant was guilty of negligence. Is the instruction correct?

The testimony tends to prove, perhaps does prove, that when the accident happened the train which injured the plaintiff was being operated in the usual and accustomed manner. It is contended on behalf of defendant that, although the plaintiff was a licensee upon its track, it might still operate its railroad as it had been accustomed to do, and having done so in the present case, the plaintiff has no right of action. There are many cases which, under certain circumstances, hold the rule maintained by the defendant. In those cases, damages have been refused to a mere licensee injured by a moving train, if the train was being operated at the time in the manner in which it had usually been operated theretofore. Thus, in *Hogan v. C., M. & St.*

*P. R. Co.* 59 Wis. 139, which was an action to recover for injuries to a child under six years of age who had been injured by a train, such child being a mere licensee upon the track, the above rule was applied, for the reason that the persons operating the train would not naturally expect a child to be upon the track at the place of the accident, and were not required to anticipate such injury as the probable result of moving the train. Hence, it was there held that the requirements of ordinary care were complied with by giving the usual signals by bell and whistle, although no lookout or watchman was provided to discover and give warning of danger to persons on the track, such precaution not having usually been taken at that place. Such application of the rule was made upon the authority of numerous adjudications referred to by Mr. Justice TAYLOR in his opinion in *Davis v. C. & N. W. R. Co.* 58 Wis. 646. We are still of the opinion that the rule was correctly applied in the *Hogan Case.* But in the present case we have a state of facts materially different. Here the injury occurred at a place where those in charge of the train knew that adults and children, in considerable numbers, were likely to be passing, and that, without some precautions being employed to avoid injury, persons, and particularly children, passing there were liable to be injured by the backing of the train. This is more especially true because, although not dark, it was in the dusk of the evening when the plaintiff was injured. The lights were set on the train. The conductor and brakemen were using lighted lanterns, and the train was moving slowly and comparatively noiselessly. Moreover, it was a long train, containing forty cars or more, and the engine was necessarily a long distance, probably seventy or eighty rods from the place where the plaintiff was hurt. This fact might prevent him from hearing any noise the engine might make in pushing the train. It is also doubtful, to say the least, whether any signal, by bell

or whistle, that the train was in motion, was then being given.

We think the foregoing circumstances bring the case within the rule of *Townley v. C., M. & St. P. R. Co.* 53 Wis. 626, which is thus stated in the opinion by Mr. Justice CASSODAY: "It seems to be pretty well settled that a railroad company must provide for a careful lookout in the direction that the train is moving, in places where people, and especially children, are liable to be upon the track. If they do not, and a person has been injured, then the company may, in the absence of contributory negligence, be held liable." We conclude, therefore, that the jury were properly instructed, as matter of law on the undisputed evidence, that the defendant was guilty of negligence in not providing a proper lookout on the freight train which backed upon the plaintiff and inflicted the injury complained of.

II. The court submitted to the jury the question whether the plaintiff was guilty of negligence which contributed proximately to the injury. Certainly there is testimony tending to show such negligence on his part. The real question is, Does the undisputed evidence prove conclusively that the plaintiff was guilty of such negligence? He was entirely familiar with the methods of operating trains at that point. When he went upon the scale track, there was sufficient light to enable him plainly to see the cars upon the track ahead of him. He thought they were standing still. They probably were standing still when he looked at them. He then allowed his attention to be diverted by the passing engine, and took no further notice of such cars. It was not necessary for him to walk upon the track to reach his home; and hence, when he chose to do so, an obligation of greater diligence was imposed upon him. He walked upon the track at least 100 feet, and the jury might have found from the testimony that he so walked a much

greater distance. It is very probable that the cars were in motion nearly all the time he was walking upon the track. The inference of negligence from these facts is a very strong one. The only excuse we discover for allowing his attention to be diverted by the passing engine is that it does not appear he knew that the cars standing upon the track were to be backed north on the Menekaunee branch.

Had he been an adult, with the same knowledge of the manner in which trains were usually operated at that point, we should be strongly inclined to hold that contributory negligence on his part was conclusively proved. But he was not an adult. He was a little less than thirteen years of age. Under well-settled rules of law, the court properly submitted to the jury the question of the degree of diligence required of him. Counsel for the defendant have cited many cases in which the courts have held, as matter of law, that children as young as he were chargeable with contributory negligence, but each of these cases stands entirely upon its own facts, and no general rule can be deduced from them which should govern this particular case. The jury, who saw the plaintiff, and heard his testimony, were best able to determine the degree of diligence which should reasonably be required of him. They have determined that question in his favor, and we cannot, without a violation of legal rules, disturb their findings in that behalf. We must hold, therefore, that the question of contributory negligence on the part of the plaintiff was properly submitted to the jury.

III. Only two rulings upon the trial, and these upon objections to the admission of testimony, are urged as grounds of reversal. These will be considered briefly.

1. On the cross-examination of the plaintiff, he was interrogated as to whether he had at any time climbed upon the cars to get a ride. An objection to this question was sustained by the court. He was allowed, however to tes-

tify, on such cross-examination, that he did not attempt to climb upon the cars the night he was injured. He also testified later that sometimes, when the trains were switching there, he got on the freight cars for a ride. We perceive no error in this ruling; and, if it was erroneous, it seems to have been cured by the subsequent cross-examination.

2. In his direct testimony a witness for the plaintiff was permitted, against objection, to testify as to how many people he had seen walking on the tracks at the point of injury in a given time, a year or more after the accident. This would have been incompetent but for the further fact that the plaintiff had before testified that the number of people walking upon the track at the time mentioned by the witness was about equal to the number walking there when he was injured. The matter was of but little importance. We think the testimony of the witness which was objected to was rendered competent by such previous testimony of the plaintiff, as one method of ascertaining the amount of travel there at the time of the accident.

*By the Court.*— The judgment of the circuit court is affirmed.