[Argued December 19, 1893; decided January 8, 1894.]

## CRAFT *v.* NORTHERN PACIFIC RAILROAD CO.

[S. C. 35 Pac. Rep. 250.]

PARENT AND CHILD — DEATH BY WRONGFUL ACT — CODE, § 34.— The word
"child," as used in section 34, Hill's Code, providing that "a father,
or in case of the death or desertion of his family the mother, may main-
tain an action as plaintiff for the death or injury of a child," means a
minor child.

APPEAL from Multnomah : E. D. SHATTUCK, Judge.

The plaintiff commenced an action in the circuit
court of Multnomah County to recover from the defend-
ant two thousand dollars on account of the death of her
son, Benjamin P. Craft, who was run over by one of the
engines of the defendant, and from the effect of which he
died on August fifteenth, eighteen hundred and ninety-
two.   At the time of his death, it is alleged that the de-
ceased was twenty-one years of age and over, that he
resided with and was a member of the family of the
plaintiff, and was cared for and supported by her, and
that he also contributed of his wages to her support, and
that by his death she has suffered and will continue to
suffer great discomforts and pecuniary loss by reason of
being deprived of the aid and assistance which her said
son, Benjamin P. Craft, was accustomed to contribute to
her support.   The complaint alleges that the husband of
plaintiff and father of deceased had, long prior to the
commencement of the suit, deserted his family.

The action is based on section 34 of Hill's Code, which provides that "A father, or, in case of the death or desertion of his family, the mother may maintain an action as plaintiff for the injury or death of a child, and a guardian for the injury or death of his ward." A demurrer was filed to the complaint, upon the ground that the right of action given to a parent for the injury or death of a child applies solely to a minor child, and that the right of action for the injury or death of an adult child survives to the personal representatives and is to be enforced under section 371 of Hill's Code, which provides that "When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action at law therefor against the latter, if the former might have maintained an action, had he lived, against the latter, for an injury done by the same act or omission. Such action shall be commenced within two years after the death, and the damages therein shall not exceed five thousand dollars, and the amount recovered, if any, shall be administered as other personal property of the deceased person." The circuit court sustained said demurrer, and rendered judgment for the defendant; from which this appeal is taken.                    AFFIRMED.

Mr. *Edward B. Watson* ( Messrs. *Jas. Finley Watson* and *B. B. Beekman* on the brief), for Appellant.

The case of *Catherine Putman* v. *The Southern Pacific Company,* 21 Or. 230, is in many respects similar to the present, but presents two important grounds of difference. There the deceased was not only an adult, but married, and living with his wife apart from his mother's family; here the deceased son was single, living in the mother's house and a member of her family; in the former the family relation was, in fact, severed; in the latter, that

relation continued in full force and without interruption: *Putman* v. *Southern Pac. Co.* 21 Or. 230. The question is thus directly presented here whether the term "child" in section 34 of Hill's Code can in any case be held to include an adult.

The term "child" primarily, and ordinarily, signifies relationship. Webster: "A son or daughter; a male or female descendant in the first degree; the immediate progeny of human parents." Bouvier: "The son or daughter in relation to the father or mother." Rapalje: "As a technical term in legal instruments, the word 'child' is generally construed to mean a legitimate as opposed to an illegitimate child." And wherever the term has been held to refer to age, the subject or context has required it. But while the rules of interpretation some time impute a secondary meaning, such as "youth" or "tender years," it is a most significant fact that the term "child" in a statute has never been held to mean a person under age. The law has always furnished terms of precise and technical meaning, to designate persons who have not attained their majority, as "minor" and "infant," and where neither of these is used, the court should have a clear warrant from the subject or context, before feeling justified in supplying them.

And while the term "child" ordinarily denotes relation and not age, the term "minor" and "infant" exclusively refer to age, and have no significance whatever as to any family relation. The terms "child" and "minor" or "infant," not being synonyms, the burden is on respondent to satisfy the court, that as used in this statute, it has the unusual meaning attached to it: Endlich on Stat. § 2.

The burden thus resting on respondent is not a light one by any means, for the rule is well established that " where a term used in a statute has acquired at common

law a settled meaning, that is ordinarily the technical meaning which is to be given to it in construing the statute": Endlich on Stat. § 3. And the reason is, "because they have a definite meaning which is supposed to have been understood by those who were or ought to have been learned in the law": *Brockett* v. *R. R. Co.* 14 Pa. St. 241, 53 Am. Dec. 534. We think the rule of literal interpretation applies here in full force. The question for the court "is not what the legislature meant, but what its language means": Endlich on Stat. § 7.

Here as the term "child" alone can never be interpreted to mean a "minor" or "infant," one of the latter words must be interpolated before it is in the statute, by judicial construction to sustain the respondent's claim. The grounds for adding to a statute must be not only cogent, but irresistible: *U. S.* v. *Coombs,* 12 Pet. 72; *Siemens* v. *Sellers,* 123 U. S. 276; *Lyman* v. *Walker,* 35 Cal. 634. And it is only where the language employed in its ordinary meaning, leads to a manifest contradiction of the apparent purpose of the act, or to some such inconvenience, absurdity, hardship, or injustice, as the legislature could not reasonably have intended, that an unusual meaning can be given to words, much less other distinct words interpolated: Endlich on Stat. § 295. This is not a case of interpretation; the question here is not whether the legislature has employed a word in one of its several recognized meanings—the word "child" has neither in technical nor common use any relation to legal minority; and the issue here is whether a distinct word, such as minor, or infant, can be added by construction, and the ordinary as well as technical sense of the word "child" qualified and changed.

It will be conceded that such a construction can only be given to carry out the plain intention of the legislature. But the intention of the lawmaker must first be

sought in the language he has used. If the words employed, in their ordinary, or any recognized meaning, disclose an intelligent purpose, there is an end to construction which would add to, or take from, the text, a single word. The court may suspect, or even be fully convinced, in its own breast, that something different was intended, but it cannot go outside of language that is neither meaningless nor contradictory, to enforce a possible, or even probable different meaning: Endlich on Stat. § 13; *Poor* v. *Considine,* 6 Wall. 458.

Sections 34 and 371 of Hill's Code are *in pari materia,* and therefore to be construed together: "Laws made by the same legislature, or upon the same subject, or relating expressly to the same point," are *in pari materia,* and "are to be taken together as if they were one law": Potter's Dwarris on Stats. § 189; Sutherland on Statutory Construction, §§ 283, 288; Endlich on Stat. § 45; *Smith* v. *People,* 47 N. Y. 330. The two sections under consideration here were the first legislation on the subject of death by wrongful act in this state giving a cause of action for damages. They were adopted by the same legislature, at the same session, and as parts of the same act. Besides, there is an express reference in section 369 which manifestly connects them as parts of one whole. This section, which stands first under the same title as section 371, declares that nothing in said title shall be construed so as "to defeat or prejudice the right of action given by section 34."

The legislature had both sections in mind. What was the probable object of this reference? Not to protect the parent's claim for damages for loss of the child's services during minority, most assuredly. Such damages never could have been claimed as a loss to the child's estate in the action by its personal representatives, as the services themselves would not have gone into its estate if

death had not intervened.    But by the law of December sixteenth, eighteen hundred and fifty-three, then and ever since in force, it was declared "That parents shall be bound to maintain their children when poor and unable to work to maintain themselves; and children shall be bound to maintain their parents in like circumstances":    Statutes, 1854, p. 360.    Here was a legal obligation on the child, (f whatever age, to support its indigent and helpless parents, just as binding and far more sacred than that of rendering services during minority, but far more likely to be confused with the remedy given to the personal representatives, to which the proviso in section 369 might, with much more reason, be held to refer.

But the act of December sixteenth, eighteen hundred and fifty-three, on the subject of the support of parents who "are poor and unable to work to maintain themselves" is even more clearly *in pari materia* with section 34 than section 371.    A parent in the condition specified in that act would suffer a loss of support by the death of the child, which it would if living be under a legal obligation to provide.    Section 34 was plainly intended to give the parent a remedy for loss suffered in the death of the child; and it has always been so construed.    Now this loss of support and the loss of services during the child's minority refer to the same basis of legal obligation, and result from the same wrongful act.    Why should one loss be compensated and the other ignored?    They are equally within the spirit and letter of section 34.    And they are equally just and well founded in antecedent legal obligation.    And if the legislature is presumed to have had in mind the common-law obligation of the child to render services during minority, there is even stronger ground for presuming that it was not unmindful of the statutory obligation of the child to provide support for its indigent and

helpless parents, which it had itself created.   And similar
statutes in other states have been held entitled to con-
sideration in construing provisions like those contained
in section 34:   *City of Chicago* v. *Keefe,* 114 Ill. 229, 55
Am. Rep. 860; *Denver, etc. Ry. Co.* v. *Wilson,* 12 Col. 20.

The history of legislation on this important subject
only tends to confirm the view for which we contend.
Lord Campbell's Act of eighteen hundred and forty-six
was the first legislation on the subject of any importance.
The hardship of the common law which allowed parents
no recovery for loss of services of a minor child, after its
decease, had been a familiar subject of discussion and
judicial opinion in the courts of England from a remote
period.   But when the British Parliament undertook to
legislate, it did not confine the remedy to that species of
loss alone.   It did just what every intelligent legislative
body would have been expected to do under such circum-
stances.   It enacted remedial provisions commensurate
with the loss.   New York followed in eighteen hundred
and forty-seven with a similar act, which has been con-
strued as embodying the same general principles: Tiffany's
Death by Wrongful Act, § 19.   Gradually legislation upon
the subject spread all over the United States, reaching
Oregon in eighteen hundred and sixty-two, as shown by
the two sections under consideration, which was not slow
considering her position and means of communication in
early days.   But all this legislation originated with Lord
Campbell's Act of eighteen hundred and forty-six, and
the point we claim for this is, that unless in the par-
ticular case there is some clear expression to the contrary,
the act ought to be construed as framed on the same
principles, and intended to accomplish the same purpose.
And such we believe has been the uniform tenor of judi-
cial decisions in this country.

And it has particularly been so held in Indiana, from

whose statutes we unquestionably borrowed the form in which those principles are embodied: *Mayhew* v. *Burns*, 103 Ind. 328.

Under Lord Campbell's Act, as well as the statute of every state in the union, which has been held to be framed on the same principles, unless there is an express limitation to the contrary, the circumstance of minority or majority of the child is treated as of no importance. The language of Lord Campbell's Act, and of the various statutes referred to, differs little in form and nothing in substance from our own. They employ the term "children" or "next of kin" instead of "child," but it is obvious that there is nothing in these merely nominal differences to indicate any distinction either in the measure of damages or the principles involved in their computation. For the expression "next of kin" includes child, and to the same effect as if so expressed. But when it appears that the child is "next of kin" and an adult, then the same question arises as that presented here, whether a minor was intended by the statute.

But under all these statutes the courts hold that majority or minority makes no difference; that it is the actual loss which give the measure of damages: *Dalton* v. *Railway Co.* 93 E. C. L. 296; *Franklin* v. *Railway Co.* 3 Hurl & N. 211; *Pennsylvania R. Co.* v. *Adams,* 55 Pa. St. 499; *Railroad Co.* v. *Kirk,* 90 Pa. St. 15; *Mayhew* v. *Burns,* 103 Ind. 328; *Houston, etc. Ry. Co.* v. *Cowser,* 57 Tex. 293; *Commonwealth* v. *Railroad Co.* 107 Mass. 236; *Baltimore, etc. Ry. Co.* v. *State,* 60 Md. 449; *Railroad Co.* v. *Mahone,* 63 Md. 135; *Potter, Admr.* v. *The C. & N. W. R. Co.* 21 Wis. 377, 44 Am. Dec. 548; *Birkett* v. *Knickerbocker Ice Co.* 110 N. Y. 504; *Denver, etc. Ry. Co.* v. *Wilson,* 12 Col. 20. We desire also to call the court's attention to the opinion in *Putman* v. *Southern Pacific Co.* 21 Or. 230, not as a binding authority, but for its review of the above

cases and general views on the construction of the statute; and we rely with confidence upon the conclusions there announced. The present case is a stronger one for the appellant, in the fact that deceased was unmarried and a member of appellant's family.

*Mr. Jos. Simon* ( *Messrs. Cyrus A. Dolph* and *Rufus Mallory* on the brief), for Respondent.

The common law, with its usual disregard of sentimental considerations, affords a parent as such no remedy for an injury to his child. He can only recover for his pecuniary loss thereby:  *Sawyer* v. *Sauer*, 10 Kan. 519. The statute of 9 and 10 Victoria, commonly called "Lord Campbell's Act," remedied to a considerable extent the hardship and injustice of the common-law rule forbidding actions for injuries causing death, and statutes of the same kind, though varying in their provisions, have been passed in most of the states.

Where the right of action is given to the personal representatives for the benefit of the widow and children, etc., the beneficiaries cannot personally sue:  *Weidner* v. *Rankin*, 26 Ohio St. 522; *Nast* v. *Tousley*, 28 Minn. 5; *Wilson* v. *Bumstead*, 12 Neb. 1; *Morovy* v. *Chaney*, 43 Iowa, 609. And in such a case the widow or father of the deceased, though the sole beneficiary, cannot sue: *Kramer* v. *Market St. R. R. Co.* 25 Cal. 434; *Hazen* v. *Kean*, 3 Dill. 124.

We contend that the word "child" in section 34 is to be construed minor child, and that the right of recovery for the injury to or death of a child provided for in such section is limited to a minor child, and it was not thereby intended to give the parent a right of action for the injury to or death of an adult child. That such is the proper construction to be given to the section is apparent from the language employed. "The father  *  *  may

maintain an action as plaintiff for the injury or death of
a child, and the guardian for the injury or death of his
ward." The right of the parent is put upon the same
basis as that of the guardian. The language used
clearly indicates that the legislature intended to confer
a right of action in favor of the parent or guardian for
the pecuniary loss sustained by reason of the injury to or
death of such child while the family relation existed be-
tween them and during the minority of such child. The
section under consideration gives a right of action for an
injury to the child as well as for the death of such child.
If an adult child is injured by the negligence of another,
he has a clear and undoubted right of action in his own
behalf and may recover damages for the injury so sus-
tained. If the contention of appellant is correct, then the
father or mother would also have a right of action for
the same injury. It certainly could never have been in-
tended to allow two recoveries for one injury. It there-
fore seems to us that the only reasonable and logical
interpretation of sections 34 and 371, is to construe such
sections as giving a parent or guardian who sustains loss
by the injury of or death of a child, an action for such
loss in his own right under section 34, if such child at
the time of its injury or death was a minor, and by giv-
ing a right of action under section 371 to the personal
representatives for the benefit of the estate on account of
the loss sustained by reason of the injury or death of an
adult child.

Again, the construction contended for by appellant
would result in the father or mother deriving the sole
benefit of both recoveries almost invariably. In the case
at bar that result would certainly follow, because it ap-
pears that the mother is the sole heir of the estate. She
has also been appointed administratrix upon his estate,
and has brought another action against the defendant

under section 371, to recover damages, all of which will inure to her benefit. An interpretation of these two statutes so as to permit this double recovery will, in our judgment, not commend itself to the sense of justice of this honorable court.

The supreme court of Washington, in construing a statute identical in terms with section 34, held in effect that the word "child" in such statute was to be interpreted minor child: *Hedrick* v. *Ilwaco R. & N. Co.* 4 Wash. The supreme court of this State, in the case of *Putman* v. *Southern Pacific Co.* 21 Or. 230, had the precise question involved in this case under consideration. It is apparent, from a reading of the opinion first rendered, that the court was led into error in its investigation of that case, and that upon a rehearing the court receded from the views at first entertained, and thereupon correctly announced the law upon the question presented. The opinion of the court upon the rehearing sustains the contention made by us that the only right of action a parent or guardian has, under section 34, is for loss of services during the minority of the child, and that such section limits the recovery for the injury to or death of a minor child, and that the right of action for the injury to or death of an adult child is confined to the personal representatives of the deceased under section 371 of Hill's Code.

PER CURIAM.

As this case involves the same question decided in *Putman* v. *S. P. Co.* 21 Or. 244, we are of the opinion that the right of action given by section 34, Hill's Code, to a parent or guardian for the injury or death of a child, is confined to minority, and that the view expressed on rehearing in that case should control and be decisive of the present case.

Judgment affirmed.                    AFFIRMED.