Argued 21 April, decided 1 May, 1903.

## SCHLEIGER v. NORTHERN TERMINAL CO.

[72 Pac. 324.]

RIGHT OF ACTION BY PARENT FOR WRONGFUL DEATH OF MINOR.

1. The right of action for causing the death of a minor child, conferred by Section 34, B. & C. Comp., on the parents of the deceased, is not exclusive of the right of the personal representative of a deceased minor to sue for causing the death under section 381 : *Putman* v. *Southern Pac. Co.* 21 Or. 230, 239, distinguished.

EVIDENCE OF CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

2. The evidence in this case on behalf of plaintiff was sufficient to carry the case to the jury on the question of negligence, and its weight is exclusively for the jury's consideration.

NEGLIGENCE—CARE REQUIRED OF CHILDREN—QUESTION FOR JURY.

3. Children of tender years are not held to the same degree of care in avoiding danger as adults, and whether a young child was guilty of contributory negligence in a given case is a proper question for the jury to decide, having in mind the age and development of the child and the conditions surrounding the occurrence: *Blackburn* v. *Southern Pac. Co.* 34 Or. 215, distinguished.

ACCIDENT AT CROSSING — INSTRUCTION AS TO NEGLIGENCE OF COMPANY.

4. When cars are being backed along or across a public street frequented by pedestrians, and the engineer is so situated that he cannot always see the track and adjacent space, it is the duty of the railroad company to provide a lookout man, either on the front of the nearest approaching car or at the crossing, to give warnings, and a failure so to do is negligence.

From Multnomah : ARTHUR L. FRAZER, Judge.

George Schleiger, as administrator, recovered a judgment of $1,225 against the Northern Pacific Terminal Company, from which the defendant appeals.

AFFIRMED.

For appellant there was a brief over the name of *Dolph, Mallory, Simon & Gearin*, with an oral argument by *Mr. John M. Gearin*.

For respondent there was a brief and an oral argument by *Mr. Wilson T. Hume*.

MR. JUSTICE WOLVERTON delivered the opinion.

This is an action instituted by George Schleiger, as administrator of the estate of his deceased son, Fred Schleiger, against the Northern Pacific Terminal Company, to recover damages resulting from the death of his said son, a minor of the age of eleven years, which it is alleged was caused by the negligence of the servants and employés of the defendant company. The defendant maintains several railroad tracks, used for switching purposes, crossing Eighth Street, in the City of Portland, near its junction with Front Street, which it approaches obliquely at an approximate angle of forty-five degrees from the southwest; and, extended across the latter street, it forms a continuous passageway to the westerly end of the approach to the Albina Ferry. At the time of the accident, the company's employés, consisting of an engineer and fireman, with the assistance of a brakeman, were engaged with engine No. 5, in switching some cars upon switch tracks Nos. 15 and 16, both of which cross Eighth Street very near its north end. They had just switched a car (possibly two or three) upon track No. 15, and pulled the train, then consisting of seven box cars, and one flat car, past No. 16, with a view of backing again upon that track, when it was observed that the ferry was making a landing with a number of passengers from Albina, whereupon the train was halted for a time (two minutes or more, perhaps), and then, at the signal of the brakeman, it was moved back upon switch No. 16; and while the end cars were crossing Eighth Street, moving slowly (at the rate

of three or four miles an hour), the decedent received the injury which resulted in his death. Herman Jessman, a boy a little larger than the deceased, and about the same age, was with him at the time, but escaped unhurt. The cars were from thirty-four to fifty feet in length, and switch No. 16 is situated some thirty or forty feet north of the street crossing. By reason of a curve in the track, and the cars obstructing his view, the fireman could not see the crossing, but the engineer was in full view of it.

John McCarty testified that he crossed on the ferry; that he first saw the two boys thereon or near it; that he passed off and upon Eighth Street, and, when fifteen yards or so beyond the track, his attention was attracted to the train of cars backing up across the street; that he saw the boys stepping upon the track three or four feet in front of the car; that, apprehending the danger, he at once threw up his hands and shouted to the brakeman, who was then on the west side of the train, two or three cars from the engine; that the car struck the boys, and he ran back, and when the train came to a standstill the brakeman took this boy out; that the other was unhurt; and that when he first crossed the track he saw no one there to signal the train, or to give warning to passengers of its approach. Herman Jessman testified that he and Fred were going up on the south side of the street to the depot; that Fred was walking to the north of him, and a few steps behind; that he happened to look up, and saw the car, and tried to get out the best way he could; that the car hit him on the side, and knocked him out, off the track, a little way from the wheel on the side away from the ferry; that when he got up he saw Fred in the middle of the track, and the cars had not then stopped moving; that he heard no bell ringing and saw no brakeman when he came near the track, but that he heard some one call to him. On cross-examination he testified that he was talk-

ing to Fred at the time; that he did not see or hear the car before he stepped on the track; that he happened to look up, and saw the car, and tried to get out the best way he could; that no switchman was in sight; that both were walking with their heads down, which was the reason he could not see the car, and if he had looked north he could have seen it coming, and so could Fred. A. Tautfest testified that at the time of the accident he was driving a team on Eighth Street, intending to cross on the ferry; that just as he approached the track he was stopped by the train coming; that as he stopped he saw some boys come along on the south side of the street, who tried to get across the track, and were caught by the train and run over; that he did not hear any bell ring or see any brakeman or switchman anywhere near where he was in the street; that he saw what he supposed was a brakeman forty or fifty yards from them; that the cars were moving about as fast as a man could walk, and almost without any noise.

Upon the part of the defendant we may say, generally, that the evidence adduced by it tended to show that its agents and employés were at the time exercising due care and precaution in the management of the train with reference to the crossing, and the danger of accident incident thereto; that the train was stopped on purpose to allow the passengers from the ferry to cross the track; that when all had crossed, so far as could be seen, the brakeman, who was then standing just north of the street, signaled the engineer to back up the train; that he walked on south, and as he did so the cars went by slowly; that when he got nearly to the south sidewalk he heard some one exclaim, "O, my God!" and that he turned and gave the engineer a signal, which brought the train to a sudden stop; that just before it came to a standstill he saw a boy come out from between the first and second cars, and

another — the one injured — underneath the second car.
In this the brakeman is more or less corroborated by the
engineer and fireman on engine No. 5, the fireman on en-
gine No. 2, and the assistant yard master.   It is further
shown that the bell on the engine was ringing automatic-
ally, and that it was the brakeman's duty to be at the end
of the train when crossing the street, to keep a lookout
for persons passing thereon, as well as to signal for the
movement of the train.

There was a motion for nonsuit when the parties rested,
which being overruled by the court, the jury returned a
verdict for the plaintiff, and, judgment having been entered
thereon, the defendant appeals.

1. The first contention of counsel for defendant is that,
as the statute of this state gives a right of action to the
father, or, in case of his death or his desertion of his family,
to the mother, for the injury or death of a child (B. & C.
Comp. § 34), it precludes any right of action by personal
representatives for damages arising out of the same casu-
alty. So he concludes that the present action is without war-
rant of law.    By Section 379, B. & C. Comp., it is provided
that a cause of action arising out of an injury to the person
dies with the person of either party, except as provided in
section 381, but that the provisions of chapter 6, relating to
"Actions by and against Executors or Administrators," in
which the section is contained, shall not be construed so
as to defeat or prejudice the right of action given by sec-
tion 34, c. 3, relating to "Parties to Actions."   Section 381
gives a right of action to the personal representatives of a
deceased person whose death is caused by the wrongful act
or omission of another, if the deceased might have main-
tained an action, had he lived, for an injury done by the
same act or omission; and the damages recoverable, not
to exceed $5,000, are required to be administered as other
personal property of the decedent.   All these sections were

adopted in 1862, and are a part of the act "to provide a Code of Civil Procedure," and naturally were intended to subserve a harmonious purpose, without impinging one upon the other. This purpose, so far as is necessary for a decision in this case, has been illustrated to some extent in former decisions of this court. It is settled that the right of action given by section 34 to the father for the injury or death of a child is limited in its scope of operation to the minority of such child; that is to say, that the term "child" is used as indicative of a minor, and not with reference to one who has attained to the age of majority (*Craft* v. *Northern Pac. R. Co.* 25 Or. 275, 35 Pac. 250); and further, that the right of action given by section 381 in favor of the personal representative is a new right, not arising from survivorship of any action the decedent may have had, but founded upon his death, without relation to the injury from which it resulted : *Perham* v. *Portland Elec. Co.* 33 Or. 451 (53 Pac. 14, 24, 40 L. R. A. 799, 72 Am. St. Rep. 730). The personal representative sues in right of the estate to recover the loss or damages, if any, it may have sustained on account of the death of the decedent; and this is measured, as nearly as the application of human experience and skill can form an estimate, by the value of the life lost, not to exceed $5,000; and neither compensation for the pain or suffering of the deceased, nor *solatium* for wounded feelings or mental suffering by him or surviving relatives, is regarded as an element attending the cause of action, or constituting any part of the measure of damages sustained : *Carlson* v. *Oregon S. L. Ry. Co.* 21 Or. 450 (28 Pac. 497). We need not go further to ascertain the purpose of this latter section, or to determine the nature of the right of action given therefor, and the question is resolved to this : Does the right of action exist by virtue thereof for the death of a minor child, having a father, mother, or guardian? At common law, the

parent was entitled to maintain an action for an injury to the child — the right thereof being founded, not upon the parental relation, but upon the technical relation of master and servant — and the compensation or damages recoverable was measured by the pecuniary loss sustained by the parent, resulting from the injury to the child : 21 Am. & Eng. Ency. Law (2 ed.), 1044 ; *Sawyer* v. *Sauer*, 10 Kan. 519.   When, however, death resulted from the injury, the right of recovery was limited to the pecuniary loss sustained by the parent on account thereof in the interim between the time of the casualty and the death.   There was no right of action in the parent, either for its death, or for any loss or damages occasioned or resulting to it therefrom.   Indeed, it was a principle of the law that no civil action was maintainable for a right springing from the death of a human being: *Davis* v. *St. Louis, I. M. & S. Ry. Co.* 53 Ark. 117, 127 (13 S. W. 801, 7 L. R. A. 283).

Furthermore, no action for personal injuries survived, and our statute upon the subject (B. & C. Comp. § 379) is but declaratory of the common law.   Section 34 therefore gives a right of action to the parent that was not maintainable at common law, unless it was confined to the injury of the child culminating in his pecuniary loss or damages in the interim between the time of the disabling injury and its death, which did not lapse with the death of the child.   Neither is it a survival statute.   It revives no right of action that the deceased could have maintained, but continues in part a right the parent formerly possessed, and in part affords him a remedy entirely new ; and, where death ensues from the injury, the two are merged, and the amount of recovery is measured by the pecuniary loss sustained by the parent or guardian by reason of both the injury and death: *Pennsylvania Co.* v. *Lilly*, 73 Ind. 252.   This seems to us to be the most reasonable interpretation of the statute, considering the

law as it originally stood, and the evil sought to be miti-
gated.    The damages recovered inure solely to the benefit
of the father, mother, or guardian, as the case may be, and
cannot be considered, under any principal of right and
justice, as a part of the estate of the decedent.    It is in-
compatible with the minor's condition that his earnings
should inure to his personal benefit, or that of his estate,
while he is in the service of his parent or guardian.    They
belong to the parent, and pass to his estate, not to that of
the child.    If, therefore, the child's death ensues through
the wrongful act of another while occupying that relation,
the parent may sustain a pecuniary loss by reason of be-
ing deprived of his services, and perhaps in some other
form, peculiarly his own, and entirely distinct from any
that may have been sustained by the minor or his estate
in the event of his death.    In this view, there is no inhar-
mony or repugnancy between sections 34 and 381.    One
gives a right of action to the father, mother, or guardian,
as the case may be, for pecuniary loss that he or she has
sustained by reason of the injury or death of the minor
child, and the other for such as the estate has sustained
by his death.    The one ends where the other begins.    The
estate could not be injured while the minor child would
be supposed to continue in the service of the parent,
and, upon the other hand, the parent could not be injured
when the child is relieved of the duty of rendering service
to him, or has attained the age of majority.    It is not
anomalous that two actions should spring from the same
wrongful act.    Injuries of different nature to different per-
sons may thus be inflicted, and actions may be prosecuted
and damages given according to the nature of the right
and principles involved.    We are borne out in this con-
clusion by *Walters* v. *Chicago, etc. R. Co.* 36 Iowa, 458,
and *Hedrick* v. *Ilwaco R. & N. Co.* 4 Wash. 400 (30 Pac.
714)—cases of nearly parallel significance with the one

at bar. See, also, *Brown* v. *Chicago & N. W. R. Co.* 102 Wis. 137 (77 N. W. 748, 78 N. W. 771, 44 L. R. A. 579); *Hulbert* v. *City of Topeka* (C. C.), 34 Fed. 510; *Davis* v. *St. Louis, I. M. & S. Ry. Co.* 53 Ark. 117 (7 L. R. A. 283, 13 S. W. 801); *Hurst* v. *Detroit City Ry.* 84 Mich. 539 (48 N. W. 44); and *Bradley, Adm'r* v. *Andrews,* 51 Vt. 525 — which are in marked analogy.

Counsel relies strongly upon the opinion of Mr. Justice LORD, in *Putman* v. *Southern Pac. Co.* 21 Or. 230, 239 (27 Pac. 1033), wherein he says (depending mainly upon the case of *Mayhew* v. *Burns,* 103 Ind. 328, 2 N. E. 793): " Under age, and when the child is in the service of his parent, there is no right of action under section 371 (B. & C. Comp. § 381) for its death, but under section 34, and the damages recoverable are for the value of the child's services from the time of the injury until he would have attained his majority, taken in connection with his prospects in life, less his support and maintenance.  *  * But when the relation of parent and child continues after majority, the parent receiving support or service may maintain his action under section 34, notwithstanding the administrator may prosecute his action under section 371, and the damages recoverable are the reasonable expectations of pecuniary advantage or prospect of support from the continuance of the relation if his life had been spared." But this expression of the learned justice cannot be considered to be the law of the case. Nor is it clear that even he adhered to it when the case was finally disposed of on a rehearing. There was a divided court, one of the justices being unable to sit, and the case was affirmed by reason thereof. As explicitly stated in the opinion on rehearing, the division arose over the interpretation of section 34; it being suggested that the right of action of the parent was confined to the minority of the child. This suggestion has since been held to be its proper construc-

tion: *Craft* v. *Northern Pac. R. Co.* 25 Or. 275 (35 Pac. 250). The case therefore lacks the essentials of a precedent for our guidance. Besides, the different construction placed upon similar statutes by the Supreme Court of Indiana, in *Mayhew* v. *Burns*, 103 Ind. 328 (2 N. E. 793), cited in Mr. Justice LORD's opinion, is only adhered to by that court upon the principle of *stare decisis*, as may be inferred from a later case: *Berry, Adm'r* v. *Louisville, E. & St. L. R. Co.* 128 Ind. 484 (28 N. E. 182). Before dismissing the subject, it should be stated that we have not attempted by anything that has been said to state any rule for the measure of damages under section 34, as it is not called for at this time.

2. On the motion for nonsuit the defendant insists that no negligence was shown upon its part, and that, upon the other hand, it was shown that plaintiff's intestate was guilty of contributory negligence. Negligence and contributory negligence are more or less relative in their significance and application. What would be negligence upon the part of a railroad company under certain conditions may not be under others, and what would be contributory negligence in one person might not amount to such in another. The Terminal Company in the present instance was operating its engine with a train of cars upon its tracks for switching purposes. Eighth Street, across which its tracks were laid, and upon which it was operating its train, was a public thoroughfare, much used by pedestrians and persons with teams crossing to and fro upon the Albina Ferry, which makes regular trips at intervals of fifteen minutes. At the time of the accident, witnesses estimate that from twenty to sixty persons landed from the ferryboat, most of whom passed out upon Eighth Street—thus indicating, in a measure, that many persons frequented the thoroughfare; and of this the defendant does not disavow knowledge. It was therefore

required to use such care and foresight to prevent acci-
dent or casualty or injury to those in the rightful use of
the street as a prudent and cautious person would under
the exigencies of the case.   Now, plaintiff's evidence tends
to show that the defendant had no brakeman upon the
end car, or other lookout at the crossing, to ascertain or
discover the presence of persons thereat, or to warn them
of danger.   Such would have been an act of reasonable
precaution under the attending conditions.   The duty
could not safely be left to the engineer or fireman upon
the engine, who were between three and four hundred feet
away, sometimes in a position to see the crossing, and at
other times not, especially when the thoroughfare across
which the defendant was engaged in backing its train was
constantly in use by the general public, and sometimes in
large numbers, and of all ages.   If the testimony estab-
lishes the facts that it tends to prove—and that is a mat-
ter for the jury—then has the defendant been shown to
be negligent, for it was without a brakeman or other per-
son upon the end car, or a lookout at the crossing, to ob-
serve the approach of persons and to warn them of the
danger.   It is true, the defendant adduces proofs tending
to show due care and proper precaution in the premises;
but this only gives rise to a dispute upon a question of
fact, and is by no means so clear and convincing that
there could be but one opinion regarding the effect of the
testimony.

3. Ordinarily an adult, with his powers of intellect and
understanding unimpaired, when he approaches a rail-
road crossing is required to look and observe for himself,
or, if the situation is such that he is unable to see, then
to listen, and thereby to determine as to the approach of
the train, and by so doing avoid the danger of accident:
*Durbin* v. *Oregon R. & Nav. Co.* 17 Or. 5 (17 Pac. 5, 11
Am. St. Rep. 778); *McBride* v. *Northern Pac. R. Co.* 19 Or.

64 (23 Pac. 814); *Blackburn* v. *Southern Pac. Co.* 34 Or. 215 (12 Am. & Eng. R. R. Cas. (N. S.) 461, 55 Pac. 225). But the law does not require so much of a child of tender years. It cannot be expected to deport itself with equal prudence and foresight, as its faculties have not yet matured, and its apprehension of danger and the means of avoiding it are not so acute or accurate. As it advances in years, the law imposes care and foresight in proportion as its understanding develops, until full responsibility attaches. So it is considered to be an appropriate question for the jury to determine whether a child of tender years, in attempting to cross a railroad track, has acted with that degree of prudence and circumspection that would be expected of it, considering its age and capacity. It is not the usual question attending the act of an adult under like circumstances, but whether the child has exercised that care and precaution that children of that age are wont to exercise generally, and thereby looking from that viewpoint to determine whether it has negligently put itself into a position of danger. Whatever is beyond the ordinary judgment and discretion of a child of usual intelligence and understanding, having regard for its age, cannot, within the bounds of reason, be required of him, and consequently his failure to come up to such a standard cannot be treated as a neglect of duty: *Wallace* v. *Suburban Ry. Co.* 26 Or. 174 (37 Pac. 477, 25 L. R. A. 663); *East Saginaw City Ry. Co.* v. *Bohn*, 27 Mich. 503; *Cooper* v. *Lake Shore & M. S. Ry. Co.* 66 Mich. 261 (33 N. W. 306, 11 Am. St. Rep. 482); *Wright* v. *Detroit, G. H. & M. Ry. Co.* 77 Mich. 123 (43 N. W. 765); *Lehman* v. *Eureka Iron & S. Works*, 114 Mich. 260 (72 N. W. 183); *McGovern* v. *New York Cent. & H. R. R. Co.* 67 N. Y. 417; *Barry* v. *New York Cent. & H. R. R. Co.* 92 N. Y. 289 (44 Am. Rep. 377); *Kentucky Cent. Ry. Co.* v. *Smith*, 93 Ky. 449 (20 S. W. 392, 18 L. R. A. 63). The intestate and his companion walked

immediately in front of this moving car, and, at first blush, it would look as if they were inexcusably nonobservant and heedless. But it is very apparent that neither of them saw the car in time to avoid the danger, for as soon as they became aware of its proximity there was an effort to escape from the peril. Whether they should have seen it is quite another thing. The bell on the engine was evidently ringing, but its distance from the furthermost car as it was crossing Eighth Street was so considerable (and it is in evidence that otherwise the train was moving obliquely toward the crossing, with but little noise) that, unless a person is charged with the absolute duty of looking and listening when about to cross the tracks of the Terminal Company, it may, within the bounds of reasonable inference, have happened that the intestate and his companion found themselves in their perilous position without negligence, viewed from the standpoint of their ages and experience. The question was one, therefore, proper to be submitted to the jury as one of fact, for their determination, and the motion for a nonsuit was rightly disposed of by the trial court.

4. The remaining exceptions involve two instructions of the court to the jury, as follows:

(1) "Where the engine is at the rear of a train, it is the duty of the company to either put a man as a lookout on the forward car, or else to station a man at the crossing for the purpose of giving warning, and the failure to do one of these two would constitute negligence.

(2) "Or if you find that, although the bell was rung, that they had no lookout, either on the forward car, or at or near the crossing, to warn pedestrians on the street that . the train was coming, it was, in that event, guilty of negligence."

Defendant's counsel insists that the court should, under proper directions, have left it to the jury to say whether the company, under all the circumstances, should have

put a man as a lookout on the forward car, or have stationed one at the crossing, for the purpose of giving notice to persons upon the street, or, in other words, whether it was negligence on its part in not observing such precautions. The answer has already been suggested. Eighth Street, where defendant's terminal tracks cross it, is very much used by persons of all ages — being a public thoroughfare used in connection with the ferry, where large numbers of persons are crossing at intervals of fifteen minutes — and the train which was then being handled was of such length that the court could very well say, as a matter of law, that it was the defendant's duty to take the precaution suggested by the instructions complained of, leaving it for the jury to say, as it did, whether they were observed. An instruction of similar import, given under like conditions, was sustained in *Whalen* v. *Chicago & N. W. R. Co.* 75 Wis. 654 (44 N. W. 849), and seems to be supported by authority, as well as upon reason and principle. See *Townley* v. *Chicago, M. & St. P. Ry. Co.* 53 Wis. 626 (11 N. W. 55); *Heddles* v. *Chicago & N. W. R. Co.* 74 Wis. 239 (42 N. W. 237); *Chicago, M. & St. P. Ry. Co.* v. *McArthur*, 53 Fed. 464 (3 C. C. A. 594); *Savannah, etc. R. Co.* v. *Shearer, Adm'x*, 58 Ala. 672. The judgment of the trial court will therefore be affirmed, and it is so ordered.

<div align="right">AFFIRMED.</div>

<div align="center">

Decided 3 November, 1902.