[Filed July 15, 1891.]

## CATHERINE PUTMAN v. SOUTHERN PACIFIC CO.

PARENT AND CHILD— PERSONAL REPRESENTATIVES— ACTION FOR DEATH OF CHILD.— Under section 34, Hill's Code, a mother during the continuance of the relation of parent and child may maintain an action in her own right for damages caused by the death of her child, while section 371, Id., gives to the personal representative a right to recover for any injury which the estate may have sustained by reason of the death of an adult, or one emancipated from parental service.

Lane county: M. L. PIPES, Judge.

Plaintiff appeals. On first hearing reversed; on rehearing, affirmed.

*B. B. Beekman,* and *Watson, Hume & Watson,* for Appellant.

*L. L. McArthur,* for Respondent.

LORD, J.—This is an action, brought by the plaintiff as the widowed and dependent mother of Robert Putman, deceased, to recover damages from the defendant company on account of his death. In substance, the complaint alleges that the deceased was in the twenty-third year of his age; was active, strong, in good health, etc., and that up to his death by the wrongful act of the defendant, and long prior thereto, he had contributed largely to the plaintiff's support, and would have continued to do so if he had lived, and that she was and still is in great need, etc.

After making the usual denials, the answer sets up as a separate defense that the said Robert Putman was, at the time of his death, a married man, and left a widow surviving him, etc., the appointment of an administrator of the estate of Robert Putman, and the recovery of a judgment by such administrator against the defendant in another action for his death, etc., and the payment and satisfaction thereof. A demurrer to this defense as insufficient in law to defeat a recovery was overruled, and judgment thereupon was rendered in favor of the defendant.

This action is based on section 34, Hill's Code, which provides: "A father, or in case of his death or the desertion

of his family, the mother, may maintain an action for the injury or death of a child, and a guardian for the injury or death of his ward"; while the action by the administrator was prosecuted under section 371 of Hill's Code, which provides: "When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action at law therefor against the latter if the former might have maintained an action had he lived against the latter for the injury done by the same act or omission. Such action shall be commenced within two years after the death, and the damages therein shall not exceed five thousand dollars, and the amount recovered if any shall be administered as other personal property of the deceased person."

That these sections were intended to give distinct and independent rights of action seems manifest from a consideration of the terms of section 369 preceding, which, after providing that a cause of action arising out of an injury to the person dies with the person of either party, except as provided in section 371, *supra*, expressly declared that "the provisions of title VI" (which includes section 371) "shall not be construed so as to * * * defeat or prejudice the right of action given by section 34," *supra.*

The action brought by the plaintiff for the injury she sustained by the wrongful death of her son, who was a married adult and left a widow surviving him, is based on the hypothesis that the word child as used in that section is not the equivalent of minor; that the relation of parent and child may continue after minority as well as before, and that when it does so exist in fact, the parent injured by such death would have a right of action within the meaning of section 34. This view of that section, coupled with section 371, *supra*, regards the two as intended to accomplish the same purpose as the statutes 9 and 10, Vict. c. 93, commonly known as Lord Campbell's Act, or those of the American states modeled upon it.

At common law no action could be maintained for the

death of a human being caused by the wrongful act of another. Its maxim was: "*Actio personalis moritur cum persona.*" Lord Campbell's Act and the laws of those states which in one form or another have adopted it were innovations upon this doctrine of the common law and designed to supply or obviate its defect by giving to the personal representative a right to recover compensation as trustee for the benefit of the wife, husband, parent and child left in a worse pecuniary position by reason of the injured person's death. The right of action is not given to the personal representative for the benefit of the estate, but the action is "for the benefit of the wife, husband, parent, and child," and the "executor or administrator of the party deceased is a mere nominal party, who sues for the benefit of the parties named in the act, and who are severally to have damages proportioned to the injury resulting to each." (*Blake* v. *Midland R. Co.* 18 Q. B. 93.)

The damages suffered by the estate of the deceased would have nothing to do with the amount of recovery. The theory of such statutes is, that those entitled to their benefits have a pecuniary interest in the life of the person whose death was occasioned by the wrongful act, and that the value of the injury sustained is to be ascertained by the jury and apportioned as directed by the law. It is to compensate them for the pecuniary loss they have sustained, and the damages must be restricted to an amount sufficient in a pecuniary sense to indemnify them for such loss on account of the death of the injured person. "Lord Campbell's act," said Mr. Justice QUAIN, "gives an entirely new action, not an action connected with the estate of the deceased in the slightest degree, and the damages recoverable in it would be no part of the estate of the deceased." (*Bradshaw* v. *L. & Y. Ry. Co.* L. R. 10 C. P. 189.) Under such statutes, then, the damages recoverable are never assets of the decedent's estate, to be applied according to its general necessities, but compensation wholly for the pecuniary loss sustained by those injured by his death to whom

such damages exclusively belong, and to whom they are to be distributed as may be directed by their provisions.

Under our statute (section 371, *supra*,) the damages recoverable, which are not to exceed five thousand dollars, are to be administered as other personal property of the deceased. They become assets to be applied by the administrator to the payment of debts, or distributed as the exigency of the estate may require and the law governing his duties as administrator may direct. He sues in his capacity as a legal representative of the estate to recover by way of damages for the loss which the estate has sustained, and not as trustee for those named in the act as its beneficiaries to recover the pecuniary loss which has been inflicted upon them by his death. In the one case, the object is to recover the loss sustained by the estate, but in the other, to recover the pecuniary loss sustained by the designated relatives.

The difference is between the damage done to the estate and the damage done to them. That to the estate is measured as near as can be by the value of the life lost, and that to the widow and next of kin by the value of the life lost to them. The right of action by the administrator for the benefit of the estate is coëxtensive with the value of the life lost, while the right of recovery for the exclusive benefit of the widow and next of kin is coëxtensive with the pecuniary injury resulting to them. In either case, as a basis for estimating damages, the expectancy of the life of the deceased—his age, health, habits, occupation or business, earnings, etc.—are all important elements to be considered, with no other difference than in one case to get at the value to be derived from the continuance of the life of the deceased, as an injury to the estate, according to rational probabilities, and in the other to ascertain the present value of the beneficiary's interest in the continuance of his life. By force of section 371 the damages recovered become a part of the general assets of the estate, which, under our statute of distribution, are applied, first to the creditors, and second to the next of kin, and which belongs to the latter,

not strictly by a right of action for a pecuniary injury sustained by them as its beneficiaries, but by virtue of a kinship through the statute for the distribution of the estates of decedents.

While, then, it is true that the right of action is given to the administrator as the legal representative of the estate, and he sues for its benefit, and the damages recovered become a part of its assets, yet the fact remains that for all substantial purposes the administrator, in the prosecution of that action and the distribution of its proceeds, represents collectively all who were interested in the continuance of that life, whether as creditors, or as wife, or as distributees.

But in giving this right of action to the administrator, section 371 makes no distinction on account of the age of the person whose death has been caused by the wrongful act or omission, and by its literal reading would seem to indicate that an action may be brought for the death of a child or an adult. But the loss of services before majority is an injury to the parent, and not the estate of the child, unless emancipated, and when his services are valuable. Besides, no injury would likely result to the estate from the death of a mere child. The more reasonable construction is, that section 371 was intended to confer a right of action upon the administrator to recover damages for the benefit of the estate for any injury which may have been sustained by reason of the death of an adult, or one emancipated from parental service.

As the damages recovered are intended to compensate for the injury sustained by the estate, and in default of debts belong to the wife or next of kin, our inquiry now is, whether the purposes of section 371, taken in connection with section 34, are sufficiently identical in purpose and object to indicate that they were intended to accomplish practically the same end as statutes commonly known as Lord Campbell's Act.

The effect of section 34 was to confer a new and independent right of action beyond that given at common law.

Under it, the father could recover for loss of services for an injury to his child during the period of disability; and if death ensued, for loss of services during the interim between the injury and the death, and the incidental expenses incurred for care and medical attendance.  But he could maintain no action to recover for the death of his child, or for services lost by the death, as the death of a human being was not an injury for which redress could be given.  As there could be no loss of services or incidental expenses when the death was instantaneous, the parent was without remedy after the death of his child.  That section 34 was intended, at least, to obviate this defect in the common law and remedy its injustice, there can be no question.  Looking at its context, there is no doubt the language, " the father," etc., " may maintain an action as plaintiff for the injury or death of his child, and a guardian for the death of his ward," seems to imply that both rights rest on the same basis, and limits the claim for loss of services to minority. That it includes only the family relation during minority, seems to be further indicated·from the language that "the father, or in case of his desertion of his family, the mother, may maintain an action," etc., as being a recognition of her succeeding to the headship of the family, and legal right to claim the services of her child.  This construction would cover the defect of the common law and give the father the right to recover for lost services for the death of his child from the time of the injury until he attained his majority.

Does the section go further, and include a right of the parent to maintain the action after his child has attained majority, when the relation of parent and child is maintained between them, and the parent is receiving support or services from the child?  It is to be observed that the new right of action is given for the death of the child as a right of action existed at common law for an injury to the child for loss of services and incidental expenses, and is

based on the idea of a pecuniary injury sustained by the loss of the child's services or support.

As section 371 gives a right of action to the administrator for the death of a person wrongfully caused, the two sections are *in pari materia*, and must be construed together. To do that, they must be taken together, and effect given to the purpose sought to be accomplished by them, if ascertainable, without doing violence to their language. It is plain that the language of section 34 is broad enough to include a recovery for the death of a child wrongfully caused whenever the relation of parent and child exists. The word child, though in many connections means a person of tender age, is not the equivalent of minor, and is often applied to persons who have passed their majority, when dealing with the relation which involves parent and child.

In statutes passed for the protection of children, the word child means a person of tender years without regard to parentage; while in statutes passed in respect to wills and intestacy, age has nothing to do with the question, and parentage everything. Emancipation from parental service or marriage may have the effect to destroy the relation of parent and child, but the child remains a minor. In some of the statutes, like section 34, the words minor child are inserted so as to expressly limit the right to damages to the minority of the deceased, indicating that without such qualification, or by the use of the word child, the right would not be dependent upon the minority of the child.

In commenting upon a like statute, RAY, J., said that "the position occupied by the person should determine the question rather than age alone." (*Pittsburgh etc. Ry. Co. v. Vining*, 27 Ind. 519; 92 Am. Dec. 269.) As we are regarding our sections as *in pari materia*, the language of *Parsons* v. *Mo. Pac. Ry. Co.* 94 Mo. 295, is not inappropriate. The court says: "The first important difference to be noted, so far as the principle to govern in this case is concerned, is, that under these and similar statutes, the right of action, when it inures to the benefit of

the parent for the death of a child, is not dependent upon the minority of the child. If the parent has a right of action under those statutes, it might be well said that such parent can recover for the value of the whole life of the child. Under our statute a right of action can only accrue to the father or mother of a minor child."

As the child when it reaches majority has the disposal of its services, he may give them in whole or in part to his parents, and continue the relation of parent and child. This principle is constantly recognized in other ways. No principle is better settled than that if the child after majority continue with the parents, the family relation is presumed to continue, and the child cannot recover for services to the parent unless there was an agreement therefor. By Lord Campbell's Act, an action is given "for the benefit of the wife, husband, parent, and child," although brought in the name of the executor or administrator; yet the word child in this act has been held to mean an adult as well as a minor son or daughter. (*Dalton* v. *Railway Co.* 93 E. C. L. 296; *Franklin* v. *Railway Co.* 3 Hurl. & N. 211.) As counsel says: "Is there not just as much reason for holding that the word child in this act means a minor as to so hold under section 34?"

The reason assigned in either case would be, that as the parent had no right at a common law to the services of the child after it had passed its majority, the legislature or parliament could only have intended to give him a remedy for the loss of such services during the period of minority had not death intervened. The statute of Pennsylvania makes a similar provision in favor of "the husband, widow, children, or parents of the deceased," and it has been repeatedly held that the word child as employed in that statute includes adults as well as minors. (*Pennsylvania R. R. Co.* v. *Adams,* 55 Pa. St. 499; *North Penn. R. R. Co.* v. *Kirk,* 90 Pa. St. 15.) But the case more directly in point, and which involved the consideration of sections of the Indiana statute almost identical with our own sections, and which presents an able and exhaustive argument upon the point of view now being investigated, is

*Mayhew* v. *Burns*, 103 Ind. 328.   Section 266 of the statute of Indiana is identical with our own section 34, and section 284 only differs in providing that the damages "must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed as personal property of the deceased."   Their section limits the right of recovery to ten thousand dollars, and ours to five thousand.   There, the damages recovered are for the exclusive benefit of the designated parties in the order named, and are to be distributed in the same manner as personal property of the deceased, while ours includes the creditor class, but without debts the direction is the same.   The court says: "By the common law the father had no right of action for lost services after the death of his child; and the effect of section 266 is to confer to that extent a new and independent right.   In our view, both the common law and the statutory damages may be recovered under that section as they are defined in *Penn. Co.* v. *Lilly*, 73 Ind. 252, and when recovered they belong to the parent in his own right, and are not distributable under section 284.   During the continuance of the relation of parent and child, the right of action is in the parent entitled to its service.   This relation presumptively continues during the minority of the child. (*Penn. Co.* v. *Adams*, 55 Pa. St. 499; *Railroad Co.* v. *Kirk*, 90 Pa. St. 15; *Railroad Co.* v. *Zebe*, 33 Pa. St. 318.)   *   *   *   If the relation of parent and child continue after majority, the parent receiving support or service may nevertheless maintain the action. In such case, the reasonable expectation of pecuniary advantage by the relation remaining may be taken into account, and damages given for the probable pecuniary loss occasioned. (*Dalton* v. *Railroad Co.* 93 E. C. L. 296; *Franklin* v. *Railroad Co.* 3 H. & N. 211; *Penn. Co.* v. *Adams*, *supra*.)   This view accords with the construction given similar statutes in England and some of the states in this country, and does not expose the wrongdoer to the hazard of being twice sued for the same wrong."

The result of this decision, as applied to their section,

is that where the wrongful act or omission occasions the
death of an adult, or one not in the service of his parent,
the right of action is exclusively under section 284, corre-
sponding substantially to our section 371; but if the
wrongful act or omission occasion the death of an adult
who is rendering service or support to his parent, then the
right of action is not exclusively under section 284, but in
addition thereto the parent receiving such service or
support may nevertheless maintain an action under section
266, which is like our section 34, and that too without
exposing the wrongdoer to the hazard of being twice sued
for the same wrong. The court in that case considered
these sections *in pari materia*, and reached the conclusion
that they were intended to accomplish the same end as the
statutes of 9 and 10 Vict. c. 93, commonly known as Lord
Campbell's Act. Our sections are susceptible of the same
construction, and if they were intended to accomplish the
same end, that case is an authority, able and strong, that a
like result should follow. The objection reiterated, that
such a construction would give a double reparation for the
same injury, cannot possibly result from such an interpreta-
tion. Under age and when the child is in the service of
his parent, there is no right of action under section 371 for
its death, but under section 34, and the damages recover-
able are for the value of the child's services from the time
of the injury until he would have attained his majority,
taken in connection with his prospects in life, less his sup-
port and maintenance. (*Penn. Co.* v. *Lilly, supra.*) But
when the relation of parent and child continues after
majority, the parent receiving support or service may
maintain his action under section 34 notwithstanding the
administrator may prosecute his action under section 371,
and the damages recoverable are the reasonable expecta-
tions of pecuniary advantage or prospect of support from
the continuance of the relation if his life had been spared.
The wrongdoer is only required to respond in such an
amount of damages as the parent has sustained by depriva-

tion of the child's service or support, which would never have constituted any part of the child's accumulations or formed any part of his estate, and consequently could not be included in any recovery by its administrator after its death.

Nor is the claim based upon any legal obligation to render the parents support by any of the statutes. "That construction," said Mr. Justice NELSON, "has been rejected by every court before which the question has been presented." (*Railroad Co.* v *Barron*, 5 Wall. 90.) It is founded upon an instinctive affection that nature has implanted in the child for its parents to serve or support them when for any causes relief or protection is needed, which justifies the expectation in them of a continuance of support or service from a child who has regularly devoted his earnings in whole or in part for their use and benefit, and the loss of which is a pecuniary injury. Can it be said, when the child, although of mature age, recognizes the filial duty of caring for his parents, who are perhaps aged and infirm, or without the means to provide for the necessaries of life, and sustains the family relation by service or support regularly furnished, that they have not suffered a pecuniary loss by his wrongful death, and that the wrongdoer ought not to compensate them for the reasonable expectation of support destroyed? Years before section 34 was enacted our statute imposed the legal obligation upon adult children to support their infirm and indigent parents. Hill's Code, § 2875, and like statutes in other states have been regarded as of important consequence in the consideration of this subject. (*Chicago* v. *Keefe*, 114 Ill. 222; 55 Am. Rep. 860; *Denver etc. R. R. Co.* v. *Wilson*, 12 Col. 21.)

To my mind there can be no doubt, though the damages come through the estate of the deceased, that sections 34 and 371, when considered together, are based substantially upon the same principles and were designed to serve the same end as statutes modeled upon Lord Campbell's Act. In both a new right of action is given, and the results practically take the same direction in conferring benefits not

before enjoyed. It matters not ·that the damages accrue to the estate and become assets; the direction given them by law serves substantially the same purpose and ends of justice. As Mr. Justice NELSON observed, such statutes seemed "to have been enacted upon the idea, as a general fact, that the assets would take the direction given them by law. Hence," he says (as we know many of the statutes do provide) "the amount recovered is to be distributed to the wife and next of kin in the proportion provided for in the distribution of personal property left by a person dying intestate." (*Railroad Co.* v. *Barron, supra.*)

It results, then, though a child may be of full age, if the family relation existed in fact and the parent had a reasonable expectation of pecuniary advantage from the relation remaining, an action can be maintained by such parent under section 34 for the death of his child wrongfully caused, notwithstanding an action may be maintained by the administrator under section 371 for the benefit of his estate. While, therefore, the court erred in overruling the demurrer to the defense set up and rendering judgment for the defendant on the ground that such a recovery by the administrator would be a bar to such action, yet the judgment must stand if the complaint is insufficient. After majority the foundation of the action is the existence in fact of the family relation of parent and child. It is the reasonable expectation of pecuniary advantage from a person bearing the family relation of parent and child, and the destruction of that expectation by the death of such person wrongfully caused, that is the ground of the action. In *Penn. Ry. Co.* v. *Adams, supra,* the deceased, though over age, was unmarried, and had always lived with his parents and labored for them. His earnings were devoted to their use, and his intention to continue to aid in their support while they lived was evidenced by repeated declarations as well as acts. In such a case, "the parents have a right to expect a continuance of support from a son remaining in the family, and who has for years contributed to it." Referring to the words parents

XXI OR.—16.

and children in the section, the court says that they were "used with the intention to indicate the family relation in point of fact as the foundation of the right of action. * * * Under age, the law presumes the relation to exist; * * * but over age, the relation must be shown to exist in point of fact." And after referring to the English cases of *Dalton* v. *Ry. Co.* 93 E. C. L. R. 296, and *Franklin* v. *Ry. Co.* 3 H. & N. 211, the court further says: "We may repeat that the rule of these cases is, that if there be a reasonable expectation of pecuniary advantage, the destruction of such expectation by negligence occasioning the death of the party from whom it arofe, will sustain the action. This is the settled rule in England for the right of recovery where the family relation exists in fact but not in law, so far as maintenance and support are concerned."

In *Penn. Ry.* v. *Kirk*, 90 Penn. St. 17, the deceased was twenty-eight years of age, had been away from home at intervals after he had attained his majority, and had been in business on his own account, but he had returned to his father's house, and for some months had been rendering service in his father's business without compensation. Upon these facts the jury were instructed positively that unless they found that the parental and filial relation was subsisting, and that there was reasonable ground to believe that it would continue to subsist between the plaintiffs and their deceased son, they could find only nominal damages. WOODWARD, J., said: "The words parents and children are used to indicate the family relation in point of fact, as the foundation of the right of action."

So in *Lehigh Iron Co.* v. *Rupp*, 100 Penn. St. 98, the deceased was over nineteen years of age, had been married six months, was keeping house and living about eight miles distant from his parents, who had given him furniture for his housekeeping, and received none of his earnings, etc., and it was held that the father had no right of action; TRUNKEY, J., saying that it had uniformly been held that "the family

relation in point of fact" must exist "as the foundation of the right of action."

It is essential, then, if the child be of full age that the family relation exist in fact, and that the parents had a reasonable expectation of pecuniary advantage from him, to maintain the action. This being so, as the foundation of the right of action, the facts showing the existence of the family relation and the pecuniary injury sustained by the death, must be alleged.

While the word family usually imports a household, including parents, children, and servants, it is not always necessary to sustain the family relation between parents and children, that they should have a residence together. It is the assumption of the duties that belong to the relation of parent and child that determines such family relation as existing in fact, and fixes their social status after maturity. Whether the child after maturity or marriage remains at the home of its parents, or takes them to his home, or furnishes them with a home, can make no difference; it is his recognition of the obligation to support them and its performance that determine their social status,—that the relation of parent and child exists in fact,—and furnishes the reasonable expectation of pecuniary advantage from its continuance upon his life and of its extinction upon his death. While the facts alleged might be made more definite, yet taking them as true, we think they are sufficient to show a reasonable expectation in the plaintiff of pecuniary advantage, and that that pecuniary advantage is owing to the relation subsisting between the plaintiff and her son, which was destroyed by his death, wrongly caused by the defendant.

It results that the judgment must be reversed and the cause remanded for trial.

BEAN, J., did not sit in this case.

[Filed November 9, 1891.]

ON REHEARING.

LORD, J.—The opinion upon which the judgment is founded proceeds mainly on the theory that section 371, Hill's Code, giving a right of action for the death of a person caused by the wrongful act or omission of another, and section 34, *Id.*, giving a right of action to the parent for the death of his child, are to be construed *in pari materia,* and so considered that they were intended to accomplish the same end as the statute commonly known as Lord Campbell's Act.

While it is admitted that section 34, in giving a right of action to the parent for the death of his child, conferred to that extent a new and independent right of action, it is suggested that the object was only to obviate the defect or injustice of the common law, which deprived him of any remedy for the lost services of his child when death resulted, and consequently his right of action was confined to the minority of the child; that it was in this view that the word child was used in section 34, *supra,* and not in the broader sense which results from construing the two sections *in pari materia* in the particulars mentioned, and to accomplish the objects already stated.

In consideration of the fact that the case was of necessity argued before and decided by two members of the court, it is enough to say, without further remark or explanation, that they are not now fully agreed that the result reached by the opinion and the judgment rendered upon it are correct, and as a consequence, that such opinion and judgment must be held for naught, and the judgment of the lower court be affirmed.