COLPITT et al. v. CHEATHAM.

No. 35716.

Supreme Court of Oklahoma.

March 9, 1954.

1004

Leon C. Phillips, Martin L. Frerichs, Okemah, for plaintiffs in error.

Clem H. Stephenson, Wewoka, Harry Stephenson, Okemah, for defendant in error.

WILLIAMS, Justice.

This case originated in the county court in connection with the probate of the will of Frank Cheatham, wherein the court adjudged that Hugh Cheatham, who was born out of wedlock to Frank Cheatham and a woman whom he never married, had been legitimated by the said Frank Cheatham pursuant to the terms of 10 O.S.1951 § 55; and that Hugh Cheatham had been omitted from the will of Frank Cheatham and was therefore entitled to inherit a portion of Frank Cheatham's estate under the statutes of descent and distribution.

The district court, on appeal, affirmed the order of the county court, and proponents of the will have appealed to this court.

Since the facts are substantially without dispute and only law questions are argued here, the following brief summary of the evidence will suffice: Frank Cheatham and Betty Hines, though unmarried, were the parents of Hugh Cheatham, who was born in Texas in 1883. Frank Cheatham later married another woman. Hugh Cheatham was thereafter taken into the home of Frank Cheatham and his wife in Texas and Hugh was acknowledged publicly as a son and treated as such for many years. However, the state of Texas has no legitimation statute. Frank Cheatham and his family moved to Oklahoma in 1908, after Hugh reached his majority, and the clear weight of the evidence is that Hugh continued to be treated as a son and a member of the family for many years, with the consent of Frank Cheatham's wife.

In 1947 Frank Cheatham died leaving a will in which Hugh Cheatham was not mentioned. Hugh Cheatham claimed his proportionate share of the estate as a forced heir, and both the county and district court held in his favor, as above noted.

Both plaintiffs in error (proponents) and defendant in error (contestant) agree that the answer to the following question will be decisive in this case: can an illegitimate adult be legitimated in this state by acts which occurred after he became an adult under the provisions of 10 O.S.1951 § 55? We believe this is a correct conception of the issue here.

The statute concerned was originally a part of article II, ch. 55, R.L.1910, § 4399, and read as follows at that time:

"The father of an illegitimate child by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of this article do not apply to such an adoption."

In 1911, the statute was amended by the addition of the following immediately preceding the last sentence:

"The status thus created is that of a child adopted by regular procedure of court." Laws 1910–1911, p. 169.

Article II of chapter 55, R.L.1910, contained all of the provisions of the statutes relating to adoption procedures, plus the

above quoted section on legitimation, and began as follows:

"Any minor child may be adopted by any adult person, in the cases, and subject to the rules prescribed in this article." (Now 10 O.S.1951 § 41.)

Proponents argue that by the terms of 10 O.S.1951 § 41, only a *minor* child can be adopted; and that because of the amendment which was adopted in 1911, above quoted, the same restriction, by positive provision of statute, applies to the operation of section 55. Defendant in error argues that by the terms of the last sentence of section 55, the "foregoing provisions" (relating to adoption of children by regular court procedure) do not apply.

We consider first the effect of the 1911 amendment to section 55. In that regard, the following from Jameson v. Jameson, 111 Okl. 82, 238 P. 426, 428, is pertinent:

"The amendment consists of the one sentence: 'The status thus created is that of a child adopted by regular procedure of court.' That status is fixed by section 8057 (10 O.S.1951 Sec. 55), which, as to inheritance, gives it the same status as if born to them in wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation. * * "

■ As construed in the above case, then, the result of the amendment was merely to affect the *status* of the child legitimated with regard to inheritance. Prior to such amendment, by the terms of section 55 a legitimated child was "deemed for all purposes legitimate from the time of its birth." After such amendment, its status was that of an adopted child, and it could not inherit property expressly limited to the heirs of the body of the parent who was not a natural parent; neither could it take from the collateral or lineal kindred of such parent by right of representation. By this interpretation, the amendment made the status of a child with reference to inheritance from his father similar to that of a child acknowledged pursuant to the requirements of 84 O.S.1951 § 215, when the natural parents shall not have intermarried.

We conclude, therefore, that the 1911 amendment concerned the *status* of the child only, and that it had no bearing on the procedures to be followed in legitimating a child born out of wedlock. It follows that proponents' argument that the statute *by its terms* is limited in application to minors is without merit, and we may disregard the amendment in our further consideration of this case. (Further, the family had removed to Oklahoma in 1908, and continued to live together as before, all prior to the adoption of such amendment.)

We next consider whether, without reference to the 1911 amendment, it can be said that the provisions of 10 O.S.1951 § 55 are limited in application to minors only.

We note first that the statute uses the terms "adopts" and "adoption". However, in In re Estate of Presley, 113 Okl. 160, 240 P. 89, 90, the court, speaking of Section 8057, Comp.Stat.1921 (now 10 O.S. 1951, § 55), said:

"This section of the statute is identical with section 230 of the Civil Code of California, which was construed in the case of Blythe v. Ayres et al., 96 Cal. 532, 31 P. 915, 19 L.R.A. 40. It was held in this case that the word 'adopt' is used in the statute in the sense of 'legitimates.' Adoption ordinarily refers to persons who are strangers in blood; legitimation to persons where blood relation exists."

In Allison v. Bryan, 26 Okl. 520, 109 P. 934, 937, 30 L.R.A.,N.S., 146, the court, speaking of the statute under discussion prior to its amendment, said:

"The word 'adopts' is used in the sense of 'legitimates,' and the child is legitimated rather than adopted."

The same conclusion was reached in the California case of In re Lund's Estate, 26 Cal.2d 472, 159 P.2d 643, 654, 162 A.L.R. 606. California has a statute identical with our present 10 O.S.1951 § 55, as it was before the 1911 amendment. The court said in the Lund case:

"It is also to be observed, as strengthening our conclusion in respect to differentiating the applicability of section 230 from that of other sections in chapter II of title II, part III, division I of the Civil Code, that there is a natural and basic difference between the adoption of blood strangers and the adoption by legitimation of a natural child. Concerning this difference, Justice Garoutte in Blythe v. Ayres, 1892, 96 Cal. 532, 559, 31 P. [915] 916, 19 L.R.A. 40, said: 'Before passing to the merits of the discussion, we pause a moment to say that the verb 'adopts,' as used in section 230, is used in the sense of 'legitimates,' and that the acts of the father of an illegitimate child, if filling the measure required by that statute, would result, strictly speaking, in the legitimation of such child, rather than in its adoption. Adoption, properly considered, refers to persons who are strangers in blood; legitimation, to persons where the blood relation exists. See law dictionaries,—Bouvier, Black, Anderson, and Rapalje. * * *"

We therefore conclude that the mere use of the terms "adopts" and "adoption" carries with it no inference that the requirement that only minors may be adopted is also applicable in the case of a legitimation. This conclusion is strengthened by the following language of the court from Brown v. Shwinogee, 128 Okl. 149, 261 P. 920, 921, although this exact question was not involved in that case. The court said in the body of the opinion, with reference to 10 O.S.1951 § 55:

"Provision of the statute as to adoption does not apply to such legitimation."

We next note that the statute uses the term "child" and we now examine the question of whether this term, as here used, is to be construed in its strict sense to mean "minor", or whether it is to be broadly construed in the sense of "descendant".

It is of course common knowledge that the term "child" is often used in the sense of "descendant" and is also often used as a convenient substitute in lieu of the words "son" or "daughter". It is so used repeatedly in our statutes of descent and distribution. See 84 O.S.1951 § 213, wherein the following terminology is found:

"* * * only one child, or the lawful issue of one child * * * issue of such child * * * and more than one child living, or one child living and the lawful issue of one or more deceased children * * * the remainder in equal shares to his children, and to the lawful issue of any deceased child * * * but if there be no child * * *."

In 84 O.S.1951 § 215 we find:

"Every illegitimate child is an heir of the person who * * * the father of such child * * * in which case such child * * * in like manner as if all the children had been legitimate * * * the estates of all the children * * *."

In Missouri-Kansas-Texas R. Co. v. Canada, 130 Okl. 171, 265 P. 1045, 1047, 59 A.L.R. 743, this court said:

"The word 'children' has many meanings. Usually it refers to a person under age. It is often applied to persons who have passed their majority, especially when dealing with relation which involves parent and child. Putman v. Southern P. Co., 21 Or. 230, 27 P. 1033; Galveston, H. & S. A. R. Co. v. Kutac, 72 Tex. 643, 11 S.W. 127. We think the most applicable definition is that used in Pittsburgh, F. T. W. & C. R. Co. v. Vining's, 27 Ind. [513] 519, 92 Am.Dec. [269] 274. The court of Indiana, in regard to a statute as here considered, said: 'The word "child," as employed in the section 27 (2 Gav. & H.Rev.St.1870, p. 56), is not to be construed as equivalent to the word "minor," but we think is limited in its application to one who occupies the position of a child to a parent, as depending upon him for protection, support, and education, and cannot be held to include one who, although a minor, has assumed the relation and

responsibility devolving upon the head of a family. Webster says the word "is applied to infants from their birth, but that the time when they cease ordinarily to be so called is not defined by custom." We think it is intended by the statute that the position occupied by the person should determine the question, rather than the age alone.'"

Although the statute involved in the above case was O.S.1921 § 824, we think the reasoning is equally applicable to 10 O.S.1951 § 55, since the parent-child relationship is a subject of both sections.

On the general subject of whether section 55 is applicable only to children or not, see the Lund case, supra, wherein the California court said:

"We likewise are satisfied that it would be contrary to the purpose of the statute and the public policy of this state, and an unwarranted restriction upon the language used, to interpret it as applying only to *minor* children. Certainly an adult is as interested as is a minor in transmutation of status from illegitimacy to legitimacy and we perceive no compelling reason why the policy of the state favoring legitimation of children should be cut off upon their attaining majority. * * *

" * * * *we have held,* that the provisions of section 230 are applicable to adult as well as minor children * * *." (Emphasis supplied.)

It should perhaps be noted that California has no statute similar to 12 O.S.1951 § 977, requiring the Supreme Court to write a syllabus "of the points of law decided in any case". For that reason, it is necessary to look to the body of the opinion in California cases, as we have done here, to determine the court's decision on points of law involved.

We have previously noted that section 230 of the California statute referred to is identical with our section 55 of 10 O.S.1951, as it read prior to the 1911 amendment, which amendment we have already shown is not pertinent in this case.

Proponents have cited several cases in which the California court held that the legitimation statute applied to minors only, and that an adult could not be legitimated. All of these cases, however, are older in point of time than the Lund case, supra, and were overruled thereby, some expressly, some by necessary implication.

Proponents also cite Thompson v. Thompson, 177 Okl. 437, 60 P.2d 615, wherein this court said in a syllabus that to establish legitimacy under this section of the statute, it must be shown, among other things, that the "father publicly acknowledged claimant to be his [child] during minority". An examination of this case discloses that the specific question here concerned (whether an adult may be legitimated) was not there involved for the reason that the children in that case were admittedly minors, and the case turned on the question of whether or not the wife of the legitimating father had consented to such legitimation. For that reason we do not consider such case controlling here.

Proponents also cite In re Lewis' Estate, 200 Okl. 352, 194 P.2d 174; this case is also inapplicable here for the same reason.

Our holdings herein render unnecessary a discussion of proponent's argument that the last sentence of section 55—"The foregoing provisions of this article do not apply to such an adoption"—refers only to "procedural" provisions, other than to call attention to the fact that the same phrase—"this article"—is used in section 41, and undoubtedly refers to the entire article.

We have shown that the use of the terms "adopt" and "adoption" does not mean that because adoptions are restricted to minors, that the same is true of legitimations under section 55; that the use of the term "child" does not restrict this section in its application to minors only; and that following the reasoning of the courts of California, which has a statute identical with ours, except as above noted, adults may be legitimated under this section.

The policy of the law is to favor legitimation of children born out of wedlock. In re Chew's Estate, 200 Okl. 317, 193 P.2d 572.

We therefore hold that an adult may be legitimated pursuant to the terms of 10 O.S.1951 § 55.

The judgment of the trial court is affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN and O'NEAL, JJ., concur.