Argued and submitted January 4, decision of Court of Appeals and judgment of circuit court affirmed July 14, 2006

Ronald JUAREZ,
individually and as personal representative
of the Estate of Felix Juarez,
Dondi Juarez,
individually;
and Altagracia Renteiria,
individually,
*Petitioners on Review,*

*v.*

WINDSOR ROCK PRODUCTS, INC.,
an Oregon corporation,
*Respondent on Review.*

(CC 03C15394; CA A123073; SC S52352)

144 P3d 211

Meagan A. Flynn of Preston Bunnell & Flynn, LLP, Portland, argued the case and filed the briefs for petitioners on review.

Bruce H. Orr of Meyer & Wyse LLP, Portland, argued the cause and filed the briefs for respondent on review. With him on the briefs were James E. Bartels and Steven J. Kuhn.

Judy C. Lucas, Assistant Attorney General, Salem, filed a brief on behalf of *amicus curiae* State of Oregon. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Lindsey H. Hughes of Keating Jones Bildstein & Hughes, PC, Portland, and Janet M. Schroer of Hoffman Hart & Wagner, LLP, Portland, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel.

DURHAM, J.

**DURHAM, J.**

The plaintiffs in this tort case ask this court to determine "[w]hether the negligent infliction of harm great enough to cause death is an injury for which the Oregon Constitution guarantees a remedy." In our view, the primary issue in this case is much narrower. We must decide whether *these* plaintiffs have alleged a claim that the remedy clause of Article I, section 10, of the Oregon Constitution, protects. For the reasons outlined below, we hold that the claim that plaintiffs have pleaded in their complaint is not such a claim.

■ Because the trial court granted defendant's motion to dismiss under ORCP 21 A, we assume the truth of all well-pleaded facts alleged in the complaint. *Kilminster v. Day Management Corp.*, 323 Or 618, 621, 919 P2d 474 (1996). According to the complaint, Felix Juarez (decedent) was an employee at Windsor Island Mine, a company owned and operated by Windsor Rock Products, Inc. On or about June 30, 2000, while at work, a backhoe bucket struck decedent, and he died as a result of his injuries. Decedent's adult children, Ronald Juarez and Dondi Juarez, and his mother, Altagracia Renteiria, filed this action in June 2003 alleging that they had "suffered a loss of society, companionship, guidance, emotional support, services and financial assistance," due to the negligently inflicted wrongful death of Felix Juarez. They also alleged that decedent had lost earnings as a result of the accident. Defendant Windsor Rock Products, Inc., moved to dismiss the complaint under ORCP 21 A for lack of jurisdiction over the subject matter and for failure to state ultimate facts sufficient to constitute a claim. The trial court granted defendant's motion and entered a judgment of dismissal on October 21, 2003. Plaintiffs appealed, and the Court of Appeals affirmed in a one sentence per curiam opinion, citing *Kilminster. Juarez v. Windsor Rock Products, Inc.*, 197 Or App 622, 106 P3d 180 (2005). We allowed plaintiffs' petition for review, and now, for the reasons stated below, affirm the decision of the Court of Appeals.

Because decedent's death occurred as a result of a workplace injury, Oregon's workers' compensation scheme

limits plaintiffs' recovery to that available pursuant to that scheme. ORS 656.018 provides, in part:

> "The liability of every employer who satisfies the duty required by ORS 656.017(1) is *exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions* arising out of and in the course of employment *that are sustained by* subject workers, *the workers' beneficiaries* and anyone otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom[.]"[1]

ORS 656.018(1)(a) (emphasis added). Plaintiffs concede that defendant is an employer that has satisfied the duty that ORS 656.017(1) imposes. Under the workers' compensation statutes, therefore, the only recovery available here is a burial benefit provided to decedent's estate. *See* ORS 656.204 (outlining benefits when death results from an accidental work injury). Decedent's mother and adult children are not entitled to any recovery under those statutes.

■   Plaintiffs argue, however, that ORS 656.018(1)(a), as applied to them, violates the remedy clause of Article I, section 10. Article I, section 10, provides:

> "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and *every man shall have remedy by due course of law for injury done him in his person, property, or reputation.*"

(Emphasis added.) Plaintiffs contend that that section of the Oregon Constitution guarantees a remedy for families of workers killed as a result of an employer's negligence. Plaintiffs assert that ORS 656.018, because it deprives plaintiffs of recovery on their common-law negligent wrongful death claim, violates Article I, section 10.[2]

---

[1] ORS 656.017(1), in turn, provides:

"Every employer subject to this chapter shall maintain assurance with the Director of the Department of Consumer and Business Services that subject workers of the employer and their beneficiaries will receive compensation for compensable injuries as provided by this chapter and that the employer will perform all duties and pay other obligations required under this chapter, by qualifying:

"(a) As a carrier-insured employer; or

"(b) As a self-insured employer as provided by ORS 656.407."

[2] Plaintiffs' complaint purports to rely on a common law wrongful death cause of action to recover for their injuries stemming from decedent's death, although the

■     In *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 123-24, 23 P3d 333 (2001), this court established the methodology for analyzing a claim under Article I, section 10. Under that methodology, we first examine whether plaintiff has alleged an injury to one of the rights protected by Article I, section 10. *Id.* at 124. According to *Smothers*,

> "[i]f the answer to that question is yes, and if the legislature has abolished the common-law cause of action for injury to rights that are protected by the remedy clause, then the second question is whether it has provided a constitutionally adequate substitute remedy for the common-law cause of action for that injury."

*Id.*

In addressing the first question in the *Smothers* analysis, our initial task is to identify the relevant circumstances of the alleged injury. *Lawson v. Hoke*, 339 Or 253, 259, 119 P3d 210 (2005). Here, the pertinent circumstances are that decedent was killed as a result of the alleged negligence of his employer and that the plaintiffs who allege injury stemming from decedent's death are his mother and adult children. Plaintiffs do not allege that they were dependent on decedent for financial support. Instead, the complaint alleges economic injury in terms of a loss of "services and financial assistance." The pertinent inquiry, therefore, is: Does the remedy clause protect a claim for "loss of society, companionship, guidance, emotional support, services and financial assistance," brought by a parent and adult children of a person who was killed allegedly as the result of the negligence of his employer? For the following reasons, we conclude that it does not.

The briefs of the parties and of the State of Oregon and Oregon Association of Defense Counsel, *amici curiae*,

---

Oregon legislature long has provided recovery for wrongful death by statute. *See Goheen v. General Motors Corp.*, 263 Or 145, 153-54, 502 P2d 223 (1972) ("The original Oregon Wrongful Death Act was included in the original Deady Code in 1862."). Oregon's current wrongful death statute, ORS 30.020 provides, in part:

> "(1)  When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent, for the benefit of the decedent's surviving spouse, surviving children, surviving parents and other individuals, * * * may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission."

focus on whether a cause of action for death by wrongful act was cognizable at common law when the Oregon Constitution was drafted in 1857, as *Smothers* instructs. *See Smothers*, 332 Or at 118 (stating that the remedy clause protects common-law rights respecting person, property, and reputation, as those rights existed in 1857). Defendant and *amici curiae* point out that our prior cases have stated generally, without extensive analysis, that wrongful death was not a cause of action recognized at common law. *See, e.g., Storm v. McClung*, 334 Or 210, 222 n 4, 47 P3d 476 (2002) ("Since at least 1891, this court has adhered to the view that no right of action for wrongful death existed at common law."); *see also Putman v. Southern Pacific Co.*, 21 Or 230, 231-32, 27 P 1033 (1891) ("At common law, no action could be maintained for the death of a human being caused by the wrongful act of another."). In *Kilminster*, this court considered an issue nearly identical to that presented here. In *Kilminster*, the individual plaintiffs were the parents of a worker killed in the course and scope of his employment with the defendant. *Id.* at 621. The plaintiffs sued the defendant under ORS 30.020, Oregon's wrongful death statute. *Id.* at 622. The trial court granted the defendant's motion to dismiss pursuant to ORCP 21 A(8). *Id.* at 622. The trial court further ruled that ORS 656.018 provided the exclusive remedy for the plaintiffs for a work-related death claim. *Id.* Before this court, the plaintiffs argued that the application of ORS 656.018 to preclude their wrongful death action violated Article I, section 10, because " 'it *takes away* the parents' claim for the wrongful death of their son.' " *Id.* at 625 (emphasis added by court). This court rejected that argument:

> "Because the legislature has chosen not to provide decedent's parents with a wrongful death action based on a theory of negligence, and *because Oregon has no common law action for wrongful death*, they have suffered no legally cognizable injury to their person, property, or reputation."

*Id.* at 627 (emphasis added; internal citation omitted).

Plaintiffs contend that *Kilminster* and our other previous cases stating that no common-law cause of action for wrongful death existed were incorrect because they stem from an ill-advised nineteenth century English decision,

*Baker v. Bolton*, 170 Eng Rep 1033, 1 Campb 493 (Nisi Prius 1808). In *Baker*, a husband sued on the death of his wife following a stagecoach accident. *Id.* In his brief opinion, Lord Ellenborough stated:

> "[T]he jury could only take into consideration the bruises which the plaintiff had himself sustained, and the loss of his wife's society, and the distress of mind he had suffered on her account, from the time of the accident till the moment of her dissolution. *In a civil Court, the death of a human being could not be complained of as an injury*; and in this case the damages, as to the plaintiff's wife, must stop with the period of her existence."

*Id.* (emphasis added).

In trying to demonstrate that, in 1857, there existed a common-law cause of action for wrongful death, plaintiffs cite several decisions from other jurisdictions that, despite *Baker v. Bolton*, allowed compensation for negligently caused death. *See, e.g., Sullivan v. Union Pac. R. Co.*, 23 F Cas 368, 371, 3 Dill 334 (D Neb 1874) (rejecting *Baker v. Bolton* because "it is not reasoned and cites no authorities, and * * * the rule it declares is without any reason to support it"); *Shields v. Yonge*, 15 Ga 349, 355, 357 (1854) (rejecting *Baker v. Bolton* and allowing a father's action for loss of services); *Plummer v. Webb*, 19 F Cas 894, 1 Ware 75, 69 (D Me 1825), *dismissed on appeal for lack of admiralty jurisdiction*, 19 F Cas 891, 4 Mason 380 (CCD Me 1827) (recognizing parent's right to recover for loss of services upon the negligently caused death of child, but concluding that father was not entitled to son's services because, at time of death, son was apprenticed to another). Plaintiffs cite other cases that assumed, without discussion, that one could recover for loss of services upon the death of certain family members. *See, e.g., James v. Christy*, 18 Mo 162, 164 (1853) (allowing recovery to father for death of son because "the father has a property in the services of his son during his minority, and whilst under his guardianship"); *Ford v. Monroe*, 20 Wend 210 (NY Sup Ct 1838) (allowing recovery to father for loss of services of child who was negligently killed).[3]

---

[3] Plaintiffs also note that legal scholars have criticized the *Baker* rule. *See, e.g.*, T.A. Smedley, *Wrongful Death—Bases of the Common Law Rules*, 13 Vand L Rev

Defendant and *amici curiae*, for their part, note this court's precedents stating that there existed no common-law right of action for wrongful death. In addition, they cite several mid-nineteenth century cases that followed *Baker v. Bolton. See, e.g., Insurance Co. v. Brame*, 95 US 754, 756 (1877) ("The authorities are so numerous and so uniform to the proposition, that by the common law no civil action lies for an injury which results in death, that it is impossible to speak of it as a proposition open to question."); *Mayhew v. Burns*, 103 Ind 328, 2 NE 793, 796 (1885) ("[b]y the common law the father had no right of action for loss of services after the death of his child"); *Emmert v. Grill*, 39 Iowa 690, 692 (1874) (stating that no common-law right of action existed to recover against one who caused the death of another); *cf. Conn. Mutual Life Ins. Co. v. N.Y. and N.H. R.R. Co.*, 25 Conn 265, 273 (1856) (adopting *Baker* rule because of possibility of "numberless actions brought on behalf of wives, children, friends, brothers, sisters and dependents of all degrees"); *Eden v. L. and F. Railroad Co.*, 53 Ky 204, 206 (1853) ("according to the principles of the common law injuries affecting life cannot, in general, be the subject of a civil action").

■    In essence, plaintiffs ask this court to overrule its prior cases that reject a common-law wrongful death cause of action. The court generally will reconsider common-law doctrines in three situations: (1) when an earlier case was "inadequately considered or wrong when it was decided"; (2) when statutes or regulations have altered an "essential legal element assumed in the earlier case"; or (3) when the earlier rule was based on specific facts that have changed. *G.L. v. Kaiser Foundation Hospitals, Inc.*, 306 Or 54, 59, 757 P2d 1347 (1988) (citations omitted); *see also Heino v. Harper*, 306 Or 347, 373-74, 759 P2d 253 (1988) (quoting rule from *Kaiser Foundation*). Plaintiffs' attack on this court's precedent falls into the first scenario—that this court's prior cases were wrong when they were decided.

---

605, 614 (1959-1960) (*Baker* has "been widely criticized as embodying a careless overstatement of the law, made without any supporting authority and induced by confusion of thought.").

In this case, however, we need not decide whether this court's prior cases were correct. Neither do we need to resolve the question whether the common law recognized a cause of action for wrongful death. Instead, for the reasons below, we conclude that plaintiffs have not alleged that they have suffered an injury to "person, property, or reputation," as they must to succeed in their Article I, section 10, argument.

It is clear that plaintiffs have not alleged an injury to their persons or reputations. As this court did in *Smothers*, 332 Or at 98-99, we look to Blackstone's Commentaries to explain the meaning of Article I, section 10. Here, we look to Blackstone to ascertain what constitutes an injury to "person, property, or reputation." Blackstone described injuries that "affect the personal security of individuals" as "either injuries against their lives, their limbs, their bodies, or their reputations." 3 William Blackstone, *Commentaries on the Laws of England* 119 (1768). Blackstone further described an injury to one's reputation as "malicious, scandalous, and slanderous *words*, tending to [one's] damage and derogation." *Id.* at 123 (emphasis in original). Here, plaintiffs do not claim injury to their own lives, limbs, bodies, or reputations.

Whether plaintiffs allege an injury to property, under Article I, section 10, requires more discussion. In interpreting an original constitutional provision, the court examines the wording of the provision, its historical circumstances, and case law surrounding it. *Smothers*, 332 Or at 91. Here, we focus on the meaning of the unmodified term, "property." Blackstone divided property into personal and real property, and described those types of property as follows:

> "*personal* [property], which consists of goods, money, and all other moveable chattels, and things thereunto incident; a property, which may attend a man's person wherever he goes, and from thence receives its denomination: and *real* property, which consists of such things as are permanent, fixed, and immoveable; as lands, tenements, and hereditaments of all kinds, which are not annexed to the person, nor can be moved from the place in which they subsist."

3 Blackstone, *Commentaries* 144 (emphasis in original). Webster's 1828 dictionary defines "property" as "[t]he exclusive right of possessing, enjoying and disposing of a thing;

ownership." Noah Webster, *An American Dictionary of the English Language* (1828). Webster's definition also states that property is "[t]he thing owned; that to which a person has the legal title, whether in his possession or not." *Id.* The definition of property in Black's law dictionary is consistent: "[r]ightful dominion over external objects; ownership; the unrestricted and exclusive right to a thing; the right to dispose of the substance of a thing in every legal way, to possess it, to use it, and to exclude everyone else from interfering with it." Henry Campbell Black, *Dictionary of Law Containing Definitions of the Terms and Phrases of American and English Jurisprudence, Ancient and Modern* 953 (1891). Black also notes that "property" is "a very wide term, and includes every class of acquisitions which a man can own or have an interest in." *Id.* at 954. Based on those broad definitions, we conclude that the term "property," in Article I, section 10, encompassed both legal and possessory interests, as well as money, goods, and "things thereunto incident."

Turning to the provision's historical circumstances, the court has reviewed extensively the history of the remedy clause of Article I, section 10. *Smothers*, 332 Or at 94-115. As with many provisions in the Oregon Constitution, the framers based Article I, section 10, on a similar provision in the Indiana Constitution of 1851. *Id.* at 105. In *Smothers*, this court noted that the remedy clause contained in the Indiana Constitution of 1816 guaranteed a remedy for " 'an injury done [to a person] in his lands, goods, person, or reputation.' " *Id.* at 106 (quoting Article I, section 11, of the Indiana Constitution of 1816). However, the Indiana Constitution of 1851 used the following words: " 'every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law.' " *Smothers*, 332 Or at 107 (quoting 1 Charles Kettleborough, *Constitution Making in Indiana*, 297-98 (1971)). The change from "goods" and "land" to the broader term "property" suggests that the drafters of the Indiana Constitution of 1851 may have intended to guarantee a remedy for a broader range of injuries.

This court's prior cases interpreting Article I, section 10, have not focused on the meaning of "person, property, or reputation." In *Smothers*, for example, the court analyzed the meaning of "injury," "remedy," and "due course of law,"

*Smothers*, 332 Or at 92, but did not analyze "person, property, or reputation." In *Kilminster*, however, the court stated that, consistent with the wording of the provision, the "Article I, section 10, remedy guarantee is implicated only if a person suffers injury to person, property, or reputation." *Kilminster*, 323 Or at 626. Then, without extensive discussion on the meaning of "person, property, or reputation," the court concluded that the plaintiffs in that case had suffered no injury to one of those interests. *Id.* at 627.

Whatever the omissions of *Kilminster*, this court elsewhere has discussed the concept of property rights in cases decided outside of the Article I, section 10, context. For example, this court previously has explained the definition of property in the context of Article I, section 18, of the Oregon Constitution, as it was understood in 1857:

> "Webster defined 'property' in 1828 both concretely (as '[a]n estate, whether in lands, goods or money') and more abstractly (as '[t]he exclusive right of possessing, enjoying and disposing of a thing'). Put differently, the dictionary definition of property in 1828 was broad enough to include both the tangible or physical thing and the legal interests pertaining to it."

*Coast Range Conifers v. Board of Forestry*, 339 Or 136, 143, 117 P3d 990 (2005) (quoting Noah Webster, *An American Dictionary of the English Language* (1828)).

Many of the cases that plaintiffs rely on to show the existence of a wrongful death cause of action at common law were rooted in property rights. Generally, those cases involved fathers seeking to recover for the loss of services of their minor children. Some courts stated explicitly that the premise for recovery in that circumstance was the father's property right in the services that their children provided. *See, e.g., Sullivan*, 23 F Cas at 369 ("the father is entitled in law to the services of his child until majority"); *James*, 18 Mo at 164 ("By our law, the father has a property in the services of his son during his minority, and whilst he is under is guardianship."). Malone explained that right in these terms:

> "The recognition of a claim by one person in the safety and welfare of another originated in the needs of the domestic institution. The right was accorded to the family head to

maintain a suit for injury to his wife or minor child, and to the master for an injury to his servant. The interest was first regarded as a property right, and consistent with this character the claim was first limited to the value of the wife's or child's services in the household.

"* * * * *

"[U]ntil very recently neither the wife nor the children had any correspondingly protected interest in the husband or father at common law. * * * Hence it is obvious that any refusal by courts to allow these members of the family to maintain a suit for the wrongful death of the husband or father in the absence of a statute would not rest upon any distinction between a wrongful taking of life, on the one hand, and an infliction of a nonfatal injury on the other. A claim by these persons must necessarily be denied in either event because neither of them ever enjoyed any recognized right in either the safety or the life of the parent or the husband."

Wex S. Malone, *The Genesis of Wrongful Death*, 17 Stan L Rev 1043, 1052-53 (1964-65). Thus, while a parent could recover at common law for the loss of services of a minor child, a child could not recover for the death of a parent because the common law considered the services of a minor child to be a property right of the parent, but not vice versa.

In Oregon, a parent similarly could recover for loss of services of a minor child:

"At common law, the parent was entitled to maintain an action for an injury to the child—the right thereof being founded, not upon the parental relation, but upon the technical relation of master and servant—and the compensation or damages recoverable was measured by the pecuniary loss sustained by the parent, resulting from the injury to the child."

*Schleiger v. Northern Terminal Co.*, 43 Or 4, 9-10, 72 P 324 (1903).[4] This right extended beyond majority, as well. In

---

[4] When death resulted from the injury, this court explained that the parents' recovery was limited to

"the pecuniary loss sustained by the parent on account thereof in the interim between the time of the casualty and the death. There was no right of action in the parent, either for its death, or for any loss or damages occasioned or resulting to it therefrom. Indeed, it was a principle of the law that no civil action was maintainable for a right springing from the death of a human being."

*Schleiger*, 43 Or at 9-10 (internal citations omitted).

*Putman,* 21 Or at 243, this court considered a statutory wrongful death claim brought by a parent on the death of her adult child and observed:

> "Whether the child after maturity or marriage remains at the home of its parents, or takes them to his home, or furnishes them with a home, can make no difference; it is his recognition of the obligation to support them and its performance that determine their social status,—that the relation of parent and child exists in fact,—and furnishes the reasonable expectation of pecuniary advantage from its continuance upon his life and of its extinction upon his death."

On reconsideration, however, the two justices that previously had decided the case disagreed as to the proper outcome of the case, and therefore the court affirmed the trial court's judgment for the defendant. *Id.* at 244.[5]

As noted, plaintiffs allege here that they have suffered a "loss of society, companionship, guidance, emotional support, services and financial assistance."[6] Plaintiffs, however, do not allege that they possess any property right that defendant's conduct has infringed. For example, plaintiffs do not allege that they were dependent on decedent for his services or financial assistance, that decedent had any legal obligation to provide such support, or that they had any other legal interest in his income. Neither do plaintiffs allege that they were legally entitled to decedent's services or the value of his services. Instead, plaintiffs allege the loss of aspects of their relationship with decedent. We do not doubt the importance of that loss to plaintiffs, but it is not a loss of any property interest for which Article I, section 10, guarantees a remedy.

---

[5] Additionally, an 1853 statute stated, "Parents shall be bound to maintain their children when poor and unable to work to maintain themselves; and children shall be bound to maintain their parents in the like circumstances." Lord's Oregon Laws, § 7054 (1853).

[6] In the complaint, the estate alleges a loss of earnings. In their response to defendant's motion to dismiss before the trial court and in their brief to the Court of Appeals, plaintiffs did not offer arguments regarding the estate's claim. Similarly, in their brief to this court, plaintiffs' arguments refer only to the claims of the family members. We therefore do not address the estate's claim for loss of earnings.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.[7]

---

[7] We note the limited nature of our holding in this case. We conclude only that *these* plaintiffs did not allege an injury to person, property, or reputation. We do not address whether different plaintiffs asserting a wrongful death claim could prevail under Article I, section 10, of the Oregon Constitution.